Andrew P. Napolitano (APN-3272)
Dreier LLP
499 Park Avenue
New York, NY 10022
(212) 328-6100

RECEIVED-CLERK
U.S. DISTRICT COURT

2007 NOV 14  P 12: 16

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------ x
AXACT (PVT.), LTD.

                Plaintiff,

        v.

STUDENT NETWORK RESOURCES, INC., STUDENT
NETWORK RESOURCES, LLC, ROSS COHEN and
JOHN DERIT,

                Defendants.
------------------------------------------------------------------ x

Civ. Act. No. 07-5491 (FLW)

**COMPLAINT**

Plaintiff Axact (Pvt.) Ltd., by its attorneys, Dreier LLP, as and for its complaint against Defendants Student Network Resources, Inc., Student Network Resources, LLC, Ross Cohen and John Derit alleges on knowledge as to its own acts and otherwise on information and belief as follows:

### NATURE OF THE ACTION

1.     Plaintiff Axact (Pvt.), Ltd. Has been severely damaged by a number of false and defamatory statements posted on various websites by the defendants. The defendants posted such defamatory statements with actual knowledge of their falsity, and/or reckless disregard for the truth or falsity of such statements, with actual malice and the intent to injure Axact's business and reputation, all to the competitive and financial advantage of defendants.

2.     Accordingly, this Complaint seeks (i) monetary damages related to

defendants' publication of defamatory statements and information, and the consequent damage to Axact's business; and (ii) an injunction prohibiting defendants from further publication of such defamatory statements.

## PARTIES

3. Plaintiff Axact (Pvt.) Ltd. ("Axact") is a Pakistani corporation with a place of business in Karachi, Pakistan.

4. Defendant Student Network Resources, Inc. is a New Jersey corporation with its principal place of business at 61 West Aspen Way, Aberdeen, NJ 07747.

5. Defendant Student Network Resources, LLC is a New Jersey limited liability company with a principal place of business at 61 Aspen Way, Aberdeen, NJ 07747.

6. Defendant Ross Cohen is an individual with an address at 61 West Aspen Way, Aberdeen, NJ 07747.

7. Defendant John Derit is an individual with an address at P.O. Box 1534 East Windsor, NJ 08512.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter on the grounds of diversity, pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court also has jurisdiction over this matter under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367. One of Plaintiff's claims is predicated upon the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq., and the remaining claims are related claims under the common law and statutory law of the State of New Jersey.

9. Venue is properly found in this district under 28 U.S.C. § 1391(a)(1), (2) and (3).

## FACTUAL BACKGROUND

10. Axact is an information technology company based in Karachi, Pakistan, which is duly registered with the Securities and Exchange Commission of Pakistan and which employs over 500 individuals. Axact's products and services are involved in interstate commerce in the United States.

11. Defendants are in direct competition with Axact. They own or are affiliated with numerous sites that sell essays to students, including www.snrinfo.com, www.essaytown.com, www.duenow.com, www.madpapers.com, www.paperdue.com, www.aceyourpaper.com, www.phd-dissertations.com, www.a-plus-essays.com, www.acedemon.com, www.custom-papers.com, www.directessays.com, www.term-paper-college.com, www.paperonthespot.com and others. According to Defendants, '[s]ince 1998, our Expert writers have helped students around the world by providing the most comprehensive, lowest-priced research service on the Internet."

12. The Defendants also control and operate several websites, including, but not limited to, www.essayfraud.org, www.essayfraud.com, www, essayfraud.net and www.essayripoff.com (the "Websites")[1]. (*See* Report from Bluehost.com, affixed hereto as Exhibit A). The Websites are used by Defendants to attempt to ruin Axact's business to Defendants' competitive and financial benefit.

13. Defendants have operated the Websites since on or about November 30, 2005. (*See* Exhibit A).

---

[1] All four of the Websites operated by Defendants automatically redirect to the home page at www.essayfraud.org.

3

14. According to the Websites, Essayfraud.org holds itself out to be "a watchdog organization that investigates plagiarism in academia." (*See* webpage capture of essayfraud.org home page, affixed hereto as Exhibit B). To that end, the Websites purport to investigate and post information regarding "scams" and allegedly fraudulent conduct by companies that provide essay writing services. (*See* Exhibit B). In fact, Defendants use the Websites to smear Axact and other competitors to Defendants' competitive and financial benefit.

15. The Websites consist of (i) a main page, which contains text describing the Websites and which lists several entities alleged to engage in plagiarism and other fraudulent conduct (the "Main Page") (*See* Exhibit B hereto); and (ii) various open forums, through which private individuals and the Defendants post and exchange comments and information (the "Message Boards"). (*See, e.g.*, Exhibits C through G hereto, webpage captures of Message Board postings).

16. All of the content and text which appears on the Main Page was authored by Defendants.

17. Postings made on the Message Boards under the screen name "EssayFraud" are authored and published by Defendants. (*See* Exhibit C hereto, indicating that the email address for user "EssayFraud" is help@essayfraud.org).

## DEFENDANTS' DEFAMATORY STATEMENTS

18. Numerous false and defamatory statements about Axact have been authored, published and disseminated by Defendants on both the Main Page and the Message Boards of the Websites. Those false and defamatory statements are described below.

19. Defendants, through the Websites, have falsely and maliciously accused Axact of perpetrating numerous frauds upon consumers, and engaging illegal activities, as further detailed below.

20. All such defamatory statements were authored by Defendants, with knowledge of their falsity, and/or reckless disregard for the truth or falsity of such statements.

21. Furthermore, Defendants published the defamatory statements with actual malice and intent to harm Axact's reputation and injure Axact's business.

**Defamatory Content on the Main Page**

22. On the Main Page of the Websites, Defendants stated that Axact, along with several other companies, was a "fraudulent site" that "hire[s] ESL writers in Pakistan and India for as little as .70 [cents] per page so that they can offer the low prices ($7.95 - $15.95 per page) that lure consumers into their traps." (*See* Exhibit B).

23. Defendants also referred to Axact as a "foreign scam site," and a "ripoff site". (Exhibit B).

24. Defendants further stated that Axact "blatantly lie[s] about their company's location and qualifications." (*See* Exhibit B).

25. All of the foregoing factual statements regarding Axact's business practices, and all factual statements implicit in those express factual statements, are false, and patently lack factual support.

26. All of the foregoing defamatory statements were authored by Defendants, with knowledge of their falsity, and/or reckless disregard for the truth or falsity of such statements.

27. Furthermore, Defendants published all of the foregoing defamatory statements with actual malice and intent to harm Axact's reputation and injure Axact's business.

**Defamatory Content on the Message Boards**

28. Defendants, using the screen name "EssayFraud," have also authored and posted several defamatory statements regarding Axact on the Message Boards.

The April 19, 2007 Posting

29. On April 19, 2007, Defendants posted a series of allegations on the Message Boards concerning "EssayRelief/Axact". (*See* Exhibit C hereto, April 19, 2007 posting by EssayFraud).

30. Specifically, Defendants stated that Axact provides *illegal* services consisting of:

   a. "Fake college degrees";

   b. "Fake Ids";

   c. "Prewritten, plagiarized term papers fraudulently passed off to customers as 'custom research'";

   d. "Web design ripoffs";

   e. "PROSTITUTION and escort (sex) services."

(Exhibit C, April 19, 2007 posting by EssayFraud).

31. Defendants further referred to Axact as a "crime syndicate." (*See* Exhibit C, April 19, 2007 posting by EssayFraud).

32. Defendants also linked to, and republished, false and defamatory information which had appeared on another website, http://www.creative-pakistan.com.

6

(*See* Exhibit C, April 19, 2007 posting by EssayFraud).

33.  Axact is currently prosecuting its causes of action for defamation against the operators of www.creative-pakistan.com in a Pakistani court, and disputes the truth of any content appearing on the www.creative-pakistan.com website. Although www.creative-pakistan.com immediately removed the defamatory information from its website, Defendants are still circulating and republishing that defamatory information.

34.  All of the foregoing factual statements in the April 19, 2007 posting regarding Axact's business practices, and all factual statements implicit in those express factual statements, are false, and patently lack factual support.

35.  All of the foregoing defamatory statements in the April 19, 2007 posting were authored by Defendants, with knowledge of their falsity, and/or reckless disregard for the truth or falsity of such statements.

36.  Furthermore, Defendants published all of the foregoing defamatory statements in the April 19, 2007 posting with actual malice and intent to harm Axact's reputation and injure Axact's business.

The May 21, 2007 Postings

37.  Subsequently, and in a separate posting, Defendants stated that they had attempted to provide a link to Axact's name in the "meta tags" of their Websites, in order to ensure that their defamatory statements about Axact would appear prominently upon a search engine inquiry for the name "Axact". (*See* Exhibit C, May 21, 2007 posting by EssayFraud).

38.  Such action evidences Defendants' malicious intent to defame Axact by exposing as many people as possible to the false and defamatory information posted by

7

Defendants.

39. Defendants repeated their defamation of Axact by again alleging that Axact operates an illegal prostitution organization in a separate post on May 21, 2007. (*See* Exhibit D hereto, May 21, 2007 posting by EssayFraud).

40. Specifically, Defendants wrote, "Axact operates a prostitution ring? Other Pakistanis reveal the details..." (*See* Exhibit D, May 21, 2007 posting by EssayFraud).

41. In the same forum, Defendants posted and linked to even more outrageous allegations regarding Axact's supposed illegal activities.

42. All of the foregoing factual statements in the May 21, 2007 posting regarding Axact's business practices, and all factual statements implicit in those express factual statements, are false, and patently lack factual support.

43. All of the foregoing defamatory statements in the May 21, 2007 posting were authored by Defendants, with knowledge of their falsity, and/or reckless disregard for the truth or falsity of such statements.

44. Furthermore, Defendants published all of the foregoing defamatory statements in the May 21, 2007 posting with actual malice and intent to harm Axact's reputation and injure Axact's business.

The May 25, 2007 Postings and the Daily Mail Article

45. On May 25, 2007, Defendants posted a statement reading "Warning: EssayRelief/Axact Gunmen Try To Murder British Reporters." (Exhibit D, May 25, 2007 posting by EssayFraud).

46. Also on May 25, 2007, Defendants separately posted another statement, which purports to describe a newspaper article which appeared in the London Daily Mail

8

newspaper in August 2006 (the "Daily Mail Article"). (*See* Exhibit E hereto, May 25, 2007 posting of EssayFraud).

47. The Daily Mail Article appeared in the London Daily Mail newspaper, but was removed from the newspaper's website after representatives of Axact notified the Daily Mail that information in the Daily Mail Article was false.

48. Axact also commenced a lawsuit against the publishers of the Daily Mail, which is currently pending in the High Court of Pakistan.

49. Nevertheless, Defendants seized upon the deleted Daily Mail Article and posted a purported copy of the article on their Websites, despite the fact that the newspaper had elected to withdraw it. (*See* Exhibit E, May 25, 2007 posting of EssayFraud with link to pdf copy of Daily Mail Article). Defendants did so a full nine months after the article had been removed from the Daily Mail's own website. Indeed, Defendants are still circulating and republishing that defamatory article.

50. The Daily Mail Article republished by Defendants contains false and defamatory information concerning Axact.

51. Furthermore, in the text accompanying the Daily Mail Article, Defendants falsely stated that "the Daily Mail was threatened by representatives of EssayRelief and Axact," and that representatives for the newspaper removed the article "out of fear." (Exhibit E, May 25, 2007 posting of EssayFraud).

52. Defendants' perpetuated their allegations regarding Axact's purported attempts to harm or murder reporters in a third posting on May 25, 2007.

53. In the third May 25th Message Board posting, Defendants provided a link to an image file that purportedly contained a picture of the office building where Axact's

offices are located. (*See* Exhibit F hereto, May 25, 2007 posting of EssayFraud).

54. In text accompanying the linked image file, Defendants stated that the office building picture "was taken by the reporters who were assaulted and threatened by death by the owner of EssayRelief." (Exhibit F, May 25, 2007 posting of EssayFraud (emphasis added)).

55. Defendants' statements alleging that Axact representatives threatened or attempted to commit murder are wholly baseless.

56. Furthermore, the linked picture is not of Axact's office building. In fact, Axact has never maintained an office in the building shown, and has no knowledge of where the pictured building is located.

57. All of the foregoing factual statements in the May 25, 2007 postings and Daily Mail Article regarding Axact's business practices, and all factual statements implicit in those express factual statements, are false, and patently lack factual support.

58. All of the foregoing defamatory statements in the May 25, 2007 postings and Daily Mail Article were authored and/or republished by Defendants, with knowledge of their falsity, and/or reckless disregard for the truth or falsity of such statements.

59. Furthermore, Defendants published and/or republished all of the foregoing defamatory statements in the May 25, 2007 postings and Daily Mail Article with actual malice and intent to harm Axact's reputation and injure Axact's business.

The August 2, 2007 Posting

60. Defendants continued their defamatory campaign against Axact through August 2007.

61. On August 2, 2007, Defendants posted a statement that "Axact is the most

notoriously fraudulent company in the research industry." (*See* Exhibit G hereto, August 2, 2007 posting of EssayFraud).

62. The Defendants further stated that Axact operates various websites, including websites entitled

- IvyDissertations.com
- TermPaperRelief.com
- AffordableDissertationWriting.com
- AffordableThesisWriting.com
- OriginalThesisWriting.com
- IvyResearchPapers.com
- AffordableResearchPapers.com

and other unnamed websites. (*See* Exhibit G).

63. In fact, Axact operates *none* of the named websites, and has no knowledge of, or affiliation with the named websites.

64. The Defendants further falsely stated that Axact "owns non-existent, bogus 'universities' and 'accreditation organizations'." (Exhibit G).

65. Even more egregiously, Defendants state that the above-mentioned online universities and accreditation organizations constitute a "national security threat," citing content which appeared on the www.cnn.com website (*See* Exhibit G, August 2, 2007 posting of EssayFraud).

66. In fact, the referenced information from CNN.com does not mention Axact by name, much less assert that Plaintiff Axact constitutes a "national security threat." (*See* Transcript, CNN Live Today, dated December 16, 2005, and affixed hereto as Exhibit H).

67. At the conclusion of the August 2, 2007 posting, Defendants again stated – for a third time – that "EssayRelief (Axact) also runs a prostitution ring." (See Exhibit G,

11

August 2, 2007 posting of EssayFraud).

68. All of the foregoing factual statements in the August 2, 2007 posting regarding Axact's business practices, and all factual statements implicit in those express factual statements, are false, and patently lack factual support.

69. All of the foregoing defamatory statements in the August 2, 2007 posting were authored by Defendants, with knowledge of their falsity, and/or reckless disregard for the truth or falsity of such statements.

70. Furthermore, Defendants published all of the foregoing defamatory statements in the August 2, 2007 postings with actual malice and intent to harm Axact's reputation and injure Axact's business.

## FIRST CAUSE OF ACTION
### (Defamation)

71. Plaintiff Axact repeats and reasserts the allegations contained in Paragraphs 1 through 70 of the Complaint as if set forth fully herein.

72. As the foregoing demonstrates, Defendants have engaged in a prolonged and concerted campaign to defame Axact by publishing false statements asserting that Axact engages in, or is affiliated with, plagiarism, fraud, prostitution, assault, murder, terrorist activities, and numerous other unethical and/or illegal activities.

73. Defendants posted such statements over the course of several months in a malicious attempt to harm Axact's reputation and injure Axact's business.

74. Defendants posted such statements with actual knowledge that the statements were false and/or with reckless disregard for the truth or falsity of such statements.

75. Defendants' defamatory statements are actually false.

76. Defendants' defamatory statements have significantly harmed Axact's reputation and standing as a legitimate and law-abiding business entity.

77. By reason of the foregoing, Axact has been damaged in an amount to be determined at trial, presently estimated to exceed $1 million.

78. Axact is also entitled to punitive damages from Defendants, as well as an injunction prohibiting Defendants from continuing such misconduct.

## SECOND CAUSE OF ACTION
### (Trade Libel)

79. Plaintiff Axact repeats and reasserts the allegations contained in Paragraphs 1 through 78 of the Complaint as if set forth fully herein.

80. Defendants have authored and published to the general public numerous false statements concerning Axact.

81. For example, Defendants have explicitly and publicly stated on the Websites that Axact engages in illegal and violent activities.

82. Similarly, Defendants have stated on the Websites that goods and services offered through Axact consist of plagiarized and substandard essays.

83. Further, Defendants also stated on the Websites that Axact engages in consumer fraud.

84. All of the foregoing statements published by Defendants concerning Axact are false. As such, Defendants have communicated false statements to the general public concerning Axact's business.

85. Defendants published such statements maliciously and with the intent to injure and impede Axact's business.

86. As a result of Defendants' actions, the value of Axact's business and

property rights has been injured.

87. By reason of the foregoing, Axact has been damaged in an amount to be determined at trial, presently estimated to exceed $1 million.

88. Axact is also entitled to punitive damages from Defendants, as well as an injunction prohibiting Defendants from continuing such misconduct.

### THIRD CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Advantage)

89. Plaintiff Axact repeats and reasserts the allegations contained in Paragraphs 1 through 88 of the Complaint as if set forth fully herein.

90. Axact's services are utilized by corporate and individual consumers across the world, and are advertised and marketed worldwide, through the internet and other means.

91. Information posted by Defendants and other individuals on the Websites demonstrates that Defendants are aware that Axact markets its products to individual and corporate consumers internationally. (*See* Exhibit C hereto).

92. By posting the false and defamatory statements set forth above, Defendants have tortiously interfered with the prospective economic advantage to be obtained by Axact from prospective customers.

93. Specifically, Defendants' dissemination of the false and defamatory statements regarding Axact severely discourages prospective and current customers from using Axact's services in the future.

94. As a result, Axact has suffered economic harm.

95. By reason of the foregoing, Axact has been damaged in an amount to be determined at trial.

96.     Axact is also entitled to punitive damages from Defendants, as well as an injunction prohibiting Defendants from continuing such misconduct.

## FOURTH CAUSE OF ACTION
### (False Advertising and Unfair Competition (15 U.S.C. § 1125(a))

97.     Plaintiff Axact repeats and reasserts the allegations contained in Paragraphs 1 through 96 of the Complaint as if set forth fully herein.

98.     Defendants have made use of false advertising and/or false or misleading representations of fact which are likely to cause confusion and mistake among the consuming public regarding the quality of service offered by Axact, in violation of 15 U.S.C. § 1125(a).

99.     Defendants have made false and/or misleading statements as to Axact's services. As a result, a substantial portion of consumers are likely to be, and actually have been, deceived. Defendants' deception is material in that it is likely to influence purchasing decisions.

100.    Defendants' actions are designed to, and have the effect of, unfairly competing with Axact. As a result, Defendants have engaged in false advertising and unfair competition under the Lanham Act.

101.    By reason of the foregoing, Axact has been damaged in an amount to be determined at trial, presently estimated to exceed $1 million, which amount should be trebled since Defendants misconduct was willful.

102.    Axact is also entitled to attorneys' fees from Defendants, as well as an injunction prohibiting Defendants from continuing such misconduct.

## FIFTH CAUSE OF ACTION
### (Consumer Fraud (N.J. Stat. 56:8-2))

103. Plaintiff Axact repeats and reasserts the allegations contained in Paragraphs 1 through 102 of the Complaint as if set forth fully herein.

104. Defendants have engaged in unconscionable commercial practices, deception, fraud and misrepresentation in connection with the sale of merchandise, in competing with Axact in violation of N.J. Stat. 56:8-2 *et seq.*

105. By reason of the foregoing, Axact has been damaged in an amount to be determined at trial, presently estimated to exceed $1 million, which amount should be trebled under N.J. Stat. 56:8-19.

106. Axact is also entitled to attorneys' fees from Defendants, as well as an injunction prohibiting Defendants from continuing such misconduct.

WHEREFORE, Axact demands judgment against Defendants, as follows:

A. On all causes of action, an injunction prohibiting Defendants, and each of their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from:

    a. Making any false statements regarding Axact;

    b. Publishing and/or republishing any false statements regarding Axact; and

    c. Making, publishing and/or republishing any of the false statements regarding Axact identified herein;

B. With respect to the First Cause of Action, for damages in an amount to be

determined at trial, presently estimated to exceed $1 million;

  C. With respect to the Second Cause of Action, damages in an amount to be determined at trial, presently estimated to exceed $1 million;

  D. With respect to the Third Cause of Action, damages in an amount to be determined at trial;

  E. With respect to the Fourth Cause of Action, damages in an amount to be determined at trial, presently estimated to exceed $1 million, which amount should be trebled because Defendants' misconduct was willful;

  F. With respect to the Fourth Cause of Action, an award of reasonable attorneys' fees and investigatory fees and expenses, together with prejudgment interest;

  G. With respect to the Fifth Cause of Action, damages in an amount to be determined at trial, presently estimated to exceed $1 million, which amount should be trebled;

  H. With respect to the Fifth Cause of Action, an award of reasonable attorneys' fees and investigatory fees and expenses, together with prejudgment interest

  I. With respect to all the First through Third Causes of Action, an award of punitive damages from Defendants;

  J. The costs and disbursements of this action; and

K.    For such other relief as this Court deems just and proper.

New York, New York
November 14, 2007

                                                  Dreier LLP

by:   /s/ Andrew P. Napolitano
                                                Andrew P. Napolitano (APN-3272)
                                                499 Park Avenue
                                                New York, NY 10022
                                                (212) 328-6100
                                                (212) 328-6101 (facsimile)

                                                Attorneys for Plaintiff