Peter L. Skolnik
Michael A. Norwick
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500
Attorneys for Defendants Student Network Resources, Inc.,
Student Network Resources, LLC and Ross Cohen

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AXACT (PVT.), LTD., | **Civil Action No. 07-CV-5491 (FLW)** |
| Plaintiff-Counterclaim Defendant, | |
| -v- | **ANSWER AND COUNTERCLAIM** |
| STUDENT NETWORK RESOURCES, INC., STUDENT NETWORK RESOURCES, LLC, ROSS COHEN and JOHN DERIT, | |
| Defendants-Counterclaim Plaintiffs. | |

Defendants Student Network Resources, Inc. ("SNR"), Student Network Resources, LLC ("SNRLLC") and Ross Cohen ("Cohen") (collectively referred to herein as "Defendants"), by way of Answer to the Complaint of Axact (Pvt.) Ltd ("Axact"), say:

### NATURE OF THE ACTION

1. Defendants deny the allegations set forth in paragraph 1. Defendants specifically state: that the statements complained of address matters of public concern; that the statements complained of are either true and therefore not actionable, or are not defamatory and therefore not actionable, or are of such a nature that they cannot be shown to be either true or false and are therefore not actionable; that all of the statements complained of were posted with a reasonable, justified, subjective belief in their truth; and that none of the statements complained

Dockets.Justia.com

of were posted with actual or common law malice, or with intent to injure Axact's business and reputation, or to the competitive and financial advantage of defendants.

2.      The allegations set forth in paragraph 2 are legal conclusions for which no response is required. To the extent an answer is required, defendants deny the allegations set forth in paragraph 2.

## PARTIES

3.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3.

4.      Defendants admit that SNR is a New Jersey corporation but deny the remaining allegations set forth in paragraph 4.

5.      Defendants admit that SNRLLC is a New Jersey limited liability company, but deny the remaining allegations set forth in paragraph 5.

6.      Defendants admit that Ross Cohen is an individual, but deny the remaining allegations set forth in paragraph 6.

7.      Defendants deny the allegations set forth in paragraph 7.

## JURISDICTION AND VENUE

8.      Because paragraph 8 consists of legal conclusions for which no response is required, defendants neither admit nor deny the allegations set forth in paragraph 8. To the extent a response is required, defendants deny the allegations set forth in paragraph 8.

9.      Because paragraph 9 consists of legal conclusions for which no response is required, defendants neither admit nor deny the allegations set forth in paragraph 9. To the extent a response is required, defendants deny the allegations set forth in paragraph 9.

## FACTUAL BACKGROUND

10.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10. However, defendants state that

from at least August 8, 2002 through on or after March 7, 2005, Axact's website claimed that "Axact is based in the United States."

11.    Defendants admit the allegations set forth in paragraph 11, but state that all of the specified sites sell only example research to consumers. Defendants further state that while Axact purports only to be an "information technology company," defendants provide no "information technology" services whatsoever; instead, defendants' sole commercial service is the provision of example research in the form of model research papers for student reference. According to Google's search index, none of the approximately six-hundred Web pages of the axact.com website contains even one of the fifteen major keywords that are critical to SNR's business. Axact's complaint – while alleging "direct competition" with defendants – fails to allege that Axact provides any example research services for student reference. Moreover, Axact implicitly but falsely denies that it owns or controls any sites selling term papers and other academic works. However, Axact's allegation of "direct competition" implicitly acknowledges – apparently inadvertently – that while it does not compete with defendants through the axact.com domain, Axact competes with SNR secretly, through Axact's operation of hundreds of ready-made term paper sites, including but not limited to IvyDissertations.com, TermPaperRelief.com, AffordableDissertationWriting.com, AffordableThesisWriting.com, OriginalThesisWriting.com, IvyResearchPapers.com and AffordableResearchPapers.com, all of which Axact specifically disclaims in paragraphs 62-63 of its Complaint. Defendants further state that unlike Axact's term paper writing sites – which purport to transfer copyright ownership of their essays and term papers for the intended purpose of permitting students to submit those materials illicitly for academic credit – the example research sites owned by or affiliated with SNR go to significant lengths, in the pre-sale stage, to ensure that every customer is fully aware of the strict limits under which they may use the copyrighted, example research material that they receive from SNR. All of SNR's sites include a detailed disclaimer that explains to prospective customers, in advance, that they may not turn in SNR's copyrighted property for academic credit, and that SNR retains 100% ownership of every example research document that

3

SNR produces. In the post-sale stage, SNR places a similar disclaimer at the top of the actual, example research document that SNR delivers to each customer, thereby reminding each customer of the strict limits under which he or she may properly reference the copyrighted, example research document.

12. Defendants admit the allegations set forth in the first sentence and footnote of paragraph 12. Defendants deny the allegations set forth in the last sentence of paragraph 12, and state that essayfraud.org was created: (i) to protect American consumers from websites – including but not limited to Axact's originalthesiswriting.com – that blatantly and purposely lie about their credentials, experience, awards, and/or location in order to deceive American consumers into believing that they are purchasing the time, research, and writing of, *e.g.*, a "retired professor with a PhD and years of teaching experience . . . as the senior faculty member at Rochville University," which defendants have reason to believe does not exist; (ii) to protect the reputation of the American research industry from the harm caused by websites – including but not limited to Axact's termpaperrelief.com – that sell products replete with the stilted language and grammatical errors common to the work of writers for whom English is a second language; (iii) to warn consumers about their potential personal liability resulting from acts of plagiarism and copyright infringement engaged in by fraudulent sites – including but not limited to Axact's sites that falsely offer to deliver "non-plagiarized" work product; (iv) to reduce the distaste created in academia, for the entire academic research industry, by websites – including but not limited to Axact's termpaperrelief.com – that openly encourage cheating, plagiarism, and/or academic fraud; (v) to make known previously-reported national security threats, such as CNN's December 2005 exposé of Axact's non-existent Rochville University, which for no more than a $500 payment issued a genuine-looking diploma reflecting the grant of a Master's Degree in Chemical Science to a CNN investigator posing as a known al Qaeda terrorist (with a $5,000,000 bounty on his head) specializing in explosives and chemical weapons; and (vi) to provide a forum in which consumers may openly discuss and inform themselves about the issues outlined in (i)–(v) above, as well as share their personal experiences.

4

13.     Defendants admit the allegations set forth in paragraph 13.  However, defendants state that although Axact claims that EssayFraud.org was created to "ruin Axact's business [for] competitive and financial benefit," to the best of defendants' knowledge, no mention of "Axact" appeared anywhere on the EssayFraud.org domain until April 17, 2007 (see Plaintiff's Exhibit C) – approximately 17 months after EssayFraud.org launched.  Thereafter, EssayFraud posted no allegation about Axact that it did not have reasonable cause to believe to be true.

14.     Defendants admit the allegations set forth in the first two sentences of paragraph 14.  Defendants deny the allegations set forth in the last sentence of paragraph 14.

15.     Defendants admit the allegations set forth in paragraph 15.

16.     Defendants deny the allegation set forth in paragraph 16.

17.     Defendants deny the allegation set forth in paragraph 17.

## DEFENDANTS' [ALLEGEDLY] DEFAMATORY STATEMENTS

18.     Defendants deny the allegations set forth in paragraph 18.  Defendants state that all references to "Axact" on the EssayFraud.org domain were originally brought to EssayFraud.org's attention by third parties – most typically in Pakistan – who claimed employment with Axact and/or some other basis for direct knowledge of Axact's operations.  EssayFraud.org employed more than reasonable diligence to investigate each received accusation concerning Axact to determine its reasonable credibility and truthfulness prior to relaying the accusation to the EssayFraud.org domain.

19.     Defendants deny the allegations set forth in paragraph 19.

20.     Defendants deny the allegations set forth in paragraph 20.

21.     Defendants deny the allegations set forth in paragraph 21.

**[Allegedly] Defamatory Content on the Main Page**

22.     Defendants admit the allegations set forth in paragraph 22, except that Defendants state on information and belief that they removed the referenced content prior to the filing of this action in November 2007.

23.     Defendants deny the allegations set forth in paragraph 23.  Defendants state that Plaintiff's Exhibit B shows unambiguously that the phrases "foreign scam site" and "ripoff site" are specifically directed to "TermPaperRelief" – not to Axact.  Paragraph 62 of Axact's Complaint specifically disclaims ownership, operation, affiliation, or even knowledge of TermPaperRelief.com.  Paragraph 23 thereby inadvertently acknowledges Axact's self-identification with TermPaperRelief.com.

24.     Defendants deny the allegations set forth in paragraph 24.  Defendants state that Plaintiff's Exhibit B shows unambiguously that the phrase "blatantly lie[s] about their company's location and qualifications" is specifically directed to "TermPaperRelief" – not to Axact.  Paragraph 62 of Axact's Complaint specifically disclaims ownership, operation, affiliation, or even knowledge of TermPaperRelief.com.  Paragraph 24 thereby inadvertently acknowledges Axact's self-identification with TermPaperRelief.com.  Defendants further state that although Axact's Complaint (at paragraph 3) asserts that it is "a Pakistani corporation with a place of business in Karachi, Pakistan," statements on the Axact.com website from at least April 21, 2004 to the present claim that "Axact is based in the US," and/or that its "front office operations [are] in the US," and that Axact maintains only a "production facility" in Pakistan.

25.     Defendants deny the allegations set forth in paragraph 25.

26.     Defendants deny the allegations set forth in paragraph 26.

27.     Defendants deny the allegation set forth in paragraph 27.

**[Allegedly] Defamatory Content on the Message Boards**

28.     Defendants deny the allegations set forth in paragraph 28.

29.     Defendants admit the allegations set forth in paragraph 29.

30.     Defendants deny the allegations set forth in paragraph 30.  Defendants state that "Essayfraud's" April 19. 2007 posting explicitly consisted of a question; it reported certain allegations that had been made about Axact *by Pakistanis* on the independent "creative-pakistan.com" domain, and included a live link to those allegations on the creative-pakistan.com domain.

31.     Defendants admit the allegations set forth in paragraph 31.

32.     Defendants admit that they "linked to, and republished . . . information which had appeared on another website, "creative-pakistan.com," but assert that they had reasonable cause to believe that the information posted on creative-pakistan.com is true.

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33, but specifically deny that they are "still circulating and republishing" the cited information.

34.     Defendants deny the allegations set forth in paragraph 34.

35.     Defendants deny the allegations set forth in paragraph 35.

36.     Defendants deny the allegations set forth in paragraph 36.

37.     Defendants deny the allegations set forth in paragraph 37.

38.     Defendants deny the allegations set forth in paragraph 38.

39.     Defendants deny the allegations set forth in paragraph 39.  Defendants state that Axact's Exhibit D is not a May 21, 2007 "separate post" concerning "an illegal prostitution organization," but merely includes a hyperlink to the same April 19, 2007 posting of information found on creative-pakistan.com and reported in Axact's Exhibit C.

40.     Defendants deny the allegations set forth in paragraph 40.  Defendants state that Axact's Exhibit D merely includes a hyperlink to the April 19, 2007 question preceding the posting of information found on creative-pakistan.com and reported in Axact's Exhibit C.

41.     To the extent that Defendants are able to discern the meaning of the ambiguous allegations set forth in paragraph 41, those allegations are denied.

42.     Defendants deny the allegations set forth in paragraph 42.

43.     Defendants deny the allegations set forth in paragraph 43, and repeat and reallege their answers to paragraphs 29-35.

44.     Defendants deny the allegations set forth in paragraph 44.

45.     Defendants state that Axact's Exhibit D speaks for itself, and respectfully refer the Court to Exhibit D for its contents.

46.     Defendants deny the allegations set forth in paragraph 46. Axact's Exhibit E is, once again, not a "separately posted . . . statement," but is merely the content displayed through the hyperlink in Axact's Exhibit D.

47.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 47.

48.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 48.

49.     Defendants admit that they posted a link to the Daily Mail article, which clearly showed the original "1 September 2005" publication date. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations that the Daily Mail "had elected to withdraw" the article, and that it "had been removed from the Daily Mail's own website" nine months prior to defendants' posting of a link. Defendants deny that they are "still circulating and republishing" the Daily Mail article.

50.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 50, since Axact has failed to identify what in the article it considers "false and defamatory."

51.     Defendants state that Axact's Exhibit E speaks for itself, and respectfully refer the Court to Exhibit E for its contents. Defendants state that they had reason to believe – and subjectively did believe – that the posted statements were true.

52.     Defendants deny the allegations set forth in paragraph 52.

53.     Defendants state that Axact's Exhibit F speaks for itself, and respectfully refer the Court to Exhibit F for its contents. Defendants deny the allegations set forth in

paragraph 53, except admit that Defendants provided a link to an image file relating to EssayRelief, not Axact, and state that any reference to "Axact" was made by a non-party visitor to the Essayfraud.org site.

54. Defendants state that Axact's Exhibit F speaks for itself, and respectfully refer the Court to Exhibit F for its contents.

55. Defendants deny the allegations set forth in paragraph 55.

56. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 56.

57. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 57, but state that none of the statements made by defendants in the "May 25, 2007 postings" – all of which addressed matters of public concern – were made with either actual malice or common law malice, but were instead made with a reasonable subjective belief in their truth.

58. Defendants deny the allegations set forth in paragraph 58.

59. Defendants deny the allegations set forth in paragraph 59.

60. Defendants deny the allegations set forth in paragraph 60.

61. Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents.

62. Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents. However, defendants assert that they have reason to believe that Axact does own, operate or control the websites specified in paragraph 62, and certain other, unnamed websites.

63. Defendants deny the allegations set forth in paragraph 63.

64. Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents. However, defendants assert that they have reason to believe that Axact does own, operate or

9

control physically non-existent universities, and accreditation organizations that are not recognized by the United States Department of Education.

65.     Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents. However, defendants assert that the conduct they have reason to believe is engaged in by Axact's "online universities and accreditation organizations" may constitute a national security threat.

66.     Defendants state that Axact's Exhibit H – a transcript from CNN Live Today about Axact's Rochville University [www.rochvilleuniversity.org] entitled, "Diploma Mills Pose Security Threat to U.S." – speaks for itself, and respectfully refer the Court to Exhibit H for its contents. Defendants admit that Exhibit H "does not mention Axact by name." However, defendants assert that the conduct of "Rochville University" described in the cited transcript from CNN Live Today can fairly and reasonably be construed as a "national security threat," and further assert that they have reason to believe that Axact owns, operates or controls "Rochville University."

67.     Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents.

68.     Defendants deny the allegations set forth in paragraph 68.

69.     Defendants deny the allegations set forth in paragraph 69.

70.     Defendants deny the allegations set forth in paragraph 70.

## FIRST CAUSE OF ACTION
### (Defamation)

71.     Defendants repeat and reallege each and every preceding response as if fully set forth herein.

72.     Defendants deny the allegations set forth in paragraph 72.

73.     Defendants deny the allegations set forth in paragraph 73.

74.     Defendants deny the allegations set forth in paragraph 74.

75.     Defendants deny the allegations set forth in paragraph 75.

76. Defendants deny the allegations set forth in paragraph 76.

77. Defendants deny the allegations set forth in paragraph 77.

78. Defendants deny the allegations set forth in paragraph 78.

## SECOND CAUSE OF ACTION
### (Trade Libel)

79. Defendants repeat and reallege each and every preceding response as if fully set forth herein.

80. Defendants deny the allegations set forth in paragraph 80.

81. Defendants deny the allegations set forth in paragraph 81.

82. Defendants admit the allegations set forth in paragraph 82, except that defendants are unable to discern the meaning Axact subscribes to the term "substandard."

83. Defendants deny the allegations set forth in paragraph 83.

84. Defendants deny the allegations set forth in paragraph 84.

85. Defendants deny the allegations set forth in paragraph 85.

86. Defendants deny the allegations set forth in paragraph 86.

87. Defendants deny the allegations set forth in paragraph 87.

88. Defendants deny the allegations set forth in paragraph 88.

## THIRD CAUSE OF ACTION
### (Tortious Interference With Prospective Economic Advantage)

89. Defendants repeat and reallege each and every preceding response as if fully set forth herein.

90. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 90.

91. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 91.

92. Defendants deny the allegations set forth in paragraph 92.

93. Defendants deny the allegations set forth in paragraph 93.

94.  Defendants deny the allegations set forth in paragraph 94.

95.  Defendants deny the allegations set forth in paragraph 95.

96.  Defendants deny the allegations set forth in paragraph 96.

## FOURTH CAUSE OF ACTION
### (False Advertising and Unfair Competition (15 U.S.C. § 1125(a)))

97.  Defendants repeat and reallege each and every preceding response as if
fully set forth herein.

98.  Defendants deny the allegations set forth in paragraph 98.

99.  Defendants deny the allegations set forth in paragraph 99.

100.  Defendants deny the allegations set forth in paragraph 100.

101.  Defendants deny the allegations set forth in paragraph 101.

102.  Defendants deny the allegations set forth in paragraph 102.

## FIFTH CAUSE OF ACTION
### (Consumer Fraud (N.J. Stat. 56:8-2))

103.  Defendants repeat and reallege each and every preceding response as if
fully set forth herein.

104.  Defendants deny the allegations set forth in paragraph 104.

105.  Defendants deny the allegations set forth in paragraph 105.

106.  Defendants deny the allegations set forth in paragraph 106.

## FIRST DEFENSE

Plaintiff has failed to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands and other principles
of equity.

## THIRD DEFENSE

Plaintiff's claims are unenforceable because the statements made by defendants are either not defamatory, or are true or substantially true, or are of such a nature that they cannot be shown to be either true or false.

## FOURTH DEFENSE

Plaintiff's claims are unenforceable because the statements made by defendants address matters of public concern, were made without actual malice or common law malice, and with a subjective belief in their truth.

## FIFTH DEFENSE

There is no basis in law or fact for Plaintiff's demands for punitive damages.

**WHEREFORE**, Defendants respectfully request judgment:

(a)    Dismissing the Complaint with prejudice;

(b)    Awarding Defendants' attorneys' fees and other costs of defense; and

(c)    Granting such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

1.      Defendant-Counterclaim Plaintiff, Student Network Resources, Inc., a New Jersey Corporation ("SNR"), is an Internet-based company that provides copyrighted, example research documents for consumer reference to customers around the world. SNR sells its services through a number of affiliated websites. It provides original example research by freelance professional writers, the vast majority of whom are native-speakers of the English language who have been carefully screened and trained by SNR. Approximately 90% of SNR's freelance researcher-writers have earned upper-level degrees from American, British, Canadian, or Australian universities, and have extensive experience with various academic research methods, styles, and formats.

2.      Ross Cohen, acting directly and pseudonymously on behalf of SNR, is the registered owner of the consumer protection website www.essayfraud.org. Essayfraud.org is not engaged in commerce; it sells no goods or services whatsoever; SNR in no way promotes www.snrinfo.com or any other website on the essayfraud.org domain. Essayfraud.org is a website designed solely to protect American consumers of example research services, to repair the reputation of the example research industry, to warn consumers about the potential for personal liability as a result of acts of plagiarism and copyright infringement by fraudulent term paper sites, to provide information about fake degree mills that potentially pose a threat to national security interests, and to provide a forum in which consumers may openly discuss and inform themselves about these issues. Essayfraud.org informs the general public about the lies and scams of various websites, and provides a means for consumers to detail their own experiences with such fraudulent and deceptive sites. The EssayFraud.org forum contains hundreds of postings by aggrieved non-party consumers complaining about fraud and deception at the hands of hundreds of different sites, many of which are, on information and belief, owned by Axact.

3.      Defendant-Counterclaim Plaintiff Ross Cohen is the President of SNR.

4.     Defendant-Counterclaim Plaintiff Student Network Resources, LLC ("SNRLLC") is a New Jersey limited liability company.

5.     Axact is a company that claims to be based in Pakistan. On information and belief, Axact owns, operates and/or controls scores of websites, using hundreds of domain names, in a number of Internet businesses. These include, *inter alia*, sites selling counterfeit academic degrees, sites selling diplomas from non-existent universities with no instructors or classrooms, and sites selling term papers and other academic works.

6.     Axact's term paper sites, which on information and belief include all of the sites about which Axact disavows knowledge and with which it disclaims affiliation in paragraph 62 of its Complaint, compete with SNR, and engage in a number of deceptive and fraudulent practices.

## COUNT I
### (Violation of Section 512(f) of the Digital Millennium Copyright Act
### 17 U.S.C. § 512(f), *et seq.*; on behalf of all Counterclaimants)

7.     The Digital Millennium Copyright Act ("DMCA") provides a safe harbor from liability for copyright infringement to Internet service providers ("ISP's") who store infringing materials created by their users, provided the ISP acts "expeditiously to remove, or disable access to" such materials after receipt of a notice alleging infringement under the DMCA. See DMCA 17 U.S.C. § 512(c).

8.     On or about June 6 and June 8, 2007, Axact served notices, under color of authority of the DMCA, upon Bluehost, Inc. ("Bluehost"), the Utah-based host of the www.essayfraud.org website. Axact's notices stated that Axact's "corporate logo and letterhead" were copyrighted works owned by Axact, and alleged that users of the www.essayfraud.org website had infringed those works. The alleged infringement consisted merely of the posting – on www.essayfraud.org – of a "screen shot" of a page from a non-party website that incorporated Axact's logo and letterhead. Rather than using the contact forms on

Essayfraud.org directly, simply, and amicably to resolve its objections to certain content on Essayfraud.org, Axact immediately resorted to the use of legal measures.

9. Axact and its attorneys knew or should have known that it holds no copyright in its "corporate logo and letterhead." Indeed, corporate logos and letterheads are not subject to copyright protection as a matter of law, and could not reasonably be argued to be copyrightable under a reasonable extension of existing law. Nevertheless, as a result of the notices sent to Bluehost, Bluehost immediately shut down access to the www.essayfraud.org website on or about June 12, 2007, and demanded that SNR remove Axact's logo and letterhead. In order to have access to its www.essayfraud.org website restored, SNR immediately and completely complied with Bluehost's demands by erasing Axact's logo and letterhead while leaving the rest of the "screen shot" of the non-party website intact.

10. On or about July 5, 2007, Axact and/or Axact's attorney again complained to Bluehost, and Bluehost again disabled the entire EssayFraud.org website. Upon discovering that EssayFraud.org had once again been disabled, SNR contacted Bluehost, and a Bluehost representative thereupon provided SNR with a list of specific URLs – apparently provided to Bluehost by Axact – that Axact demanded to be removed from EssayFraud.org. Once again, in full compliance and cooperation, SNR immediately either deleted altogether or substantially edited the content of each identified URL, with the result that absolutely no mention of "Axact" remained in those URLs. SNR's willingness to comply with the demands Axact had made through Bluehost stemmed not from SNR's knowledge or belief that any of the removed content was false or defamatory, but from SNR's recognition that its compliance was necessary in order for Bluehost to re-activate the EssayFraud,org website.

11. Under the DMCA, the clerk of any federal district court will issue a subpoena to an ISP for the purpose of obtaining the identity of the ISP's user(s) when a party submits a "sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will *only* be used for the

purpose of protecting rights *under this title*." 17 U.S.C. § 512 (h)(2)(C) (emphasis added), *i.e.*, the Copyright Act.

12.     Also on or about July 5, 2007, Axact, through and in concert with its attorney, Paul B. O'Flaherty, Jr., of the firm Cheely, O'Flaherty & Ayres, filed an application with the United States District Court for the District of Utah, requesting that a subpoena pursuant to the DMCA be served on Bluehost, Inc. A copy of the pleading is attached as Exhibit A.

13.     Included in Axact's application was a sworn affidavit, made pursuant to Section 512(h) of the DMCA, stating: (i) that the purpose of the requested subpoena was to "identify the person or persons who caused material infringing upon Axact (Pvt) Ltd.'s copyright posted on the websites hosted by Bluehost, Inc."; and (ii) that the "information obtained pursuant to the subpoena will *only* be used for the purpose of protecting Axact (Pvt) Ltd.'s legal rights in relation *to these unlawful internet postings*." Exhibit A (emphasis added).

14.     Axact, acting through and in concert with Cheely, O'Flaherty & Ayres, deliberately and willfully misled the Court into issuing a subpoena under the transparent pretext that the operators of www.essayfraud.org had committed a copyright violation, when no copyright violation had occurred. The true objective of this deliberately and willfully misleading application was to identify the operators of www.essayfraud.org for the purpose of filing this frivolous lawsuit alleging defamation, Lanham Act violations, and related state law causes of action.

15.     Indeed, Axact admits its true motive in bringing the DMCA lawsuit in a statement posted on Axact's website, at axact.com/truth:

> A discovery suit was filed in Utah, USA, to discover the hidden identity of a website owner who claimed his website to be an "independent fraud watch-dog organization" and was listed as a source by the above-mentioned freelance journalist of a British newspaper. The discovery suit revealed the identity to be the owner of a company involved in research and writing business and was probably defaming Axact as he felt threatened by the low cost outsourcing services of Axact provided to its many competitor organizations.

> After the above discovery, a US$ 5 million damages lawsuit was filed in New Jersey, USA, against the owner of the above-mentioned website for his strong involvement in the defamation campaign against Axact. Defamation, trade libel, false advertising, unfair competition and consumer fraud are taken up as major causes of action in the lawsuit.

Axact's press release, entitled "Axact's Response to The Defamation Campaign," is attached as Exhibit B.

16.     Moreover, an entry dated July 23, 2007 in Bluehost's customer log (attached to Axact's Complaint as Exhibit A) reflects that Axact continued to press Bluehost to remove discussions about Axact from www.essayfraud.org, even though Axact's logo and letterhead – the very thing Axact had purported to be protected by copyright – had been removed weeks earlier.

17.     After obtaining and serving the subpoena upon Bluehost, Axact obtained the identities of Counterclaim-Plaintiffs Student Network Resources, Inc., Student Network Resources, LLC., and Ross Cohen, and proceeded to file suit against them in this action – an action that makes no reference whatsoever to any purported infringement of Axact's corporate logo, much less allege *any* copyright violation under Title 17 of the United States Code.

18.     Axact's actions set forth above constitute a fraud on the court that violated Section 512(f) of the DMCA, which creates a cause of action against "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing."

19.     Axact's actions have caused substantial damages to Student Network Resources, Inc., Student Network Resources, LLC., and Ross Cohen.

**WHEREFORE** Counterclaimants hereby demand that judgment be entered against Plaintiff, awarding compensatory and punitive damages, costs and attorneys' fees pursuant to 17 U.S.C. § 512, and granting declaratory relief holding that Axact's conduct constitutes a violation of the DMCA and that neither the alleged infringing postings nor any

other material removed from www.essayfraud.org pursuant to the DMCA notices violated Axact's copyright.

**LOWENSTEIN SANDLER PC**
Attorneys for Defendants Student Network Resources, Inc., Student Network Resources, LLC and Ross Cohen

By: /s/ Peter L. Skolnik
Peter L. Skolnik, Esq.
Michael A. Norwick, Esq.
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, NJ 07068-1791
973-597-2500(Phone)
973-597-2400 (Fax)

Dated: February 4, 2008

## JURY DEMAND

Counterclaimants hereby demand a trial by jury as to all issues so triable.

LOWENSTEIN SANDLER PC
Attorneys for Defendants Student Network Resources, Inc.,
Student Network Resources, LLC and Ross Cohen

By:  /s/ Peter L. Skolnik
Peter L. Skolnik

Dated:  February 4, 2008

## CERTIFICATION PURSUANT TO F.R.C.P. RULE 7.1

Pursuant to Federal Rule of Civil Procedure 7.1 and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for Defendants Student Network Resources, Inc., Student Network Resources, LLC and Ross Cohen certify that there are no parent corporations or any publicly held corporations that own 10% or more of their stock.

**LOWENSTEIN SANDLER PC**
Attorneys for Defendants Student Network Resources, Inc.,
Student Network Resources, LLC and Ross Cohen

By: /s/ Peter L. Skolnik
Peter L. Skolnik

Dated:  February 4, 2008

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that, to the best of my knowledge, the subject matter of this proceeding is not the subject of any other pending court action, or of any pending arbitration or administrative proceeding. I am aware that if the foregoing is willfully false, I am subject to punishment.

**LOWENSTEIN SANDLER PC**
Attorneys for Defendants Student Network Resources, Inc.,
Student Network Resources, LLC and Ross Cohen

By: /s/ Peter L. Skolnik
Peter L. Skolnik

Dated: February 4, 2008