Peter L. Skolnik
Michael A. Norwick
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey  07068
(973) 597-2500
Attorneys for Defendants Student Network Resources, Inc.,
Student Network Resources, LLC and Ross Cohen

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AXACT (PVT.), LTD., <br><br> Plaintiff-Counterclaim Defendant, <br><br><br> -v- <br><br> STUDENT NETWORK RESOURCES, INC., <br> STUDENT NETWORK RESOURCES, LLC, <br> ROSS COHEN and JOHN DERIT, <br><br> Defendants-Counterclaim Plaintiffs. | Civil Action No. 07-CV-5491 (FLW) <br><br><br><br> **AMENDED ANSWER AND <br> COUNTERCLAIMS** |

Defendants Student Network Resources, Inc. ("SNR"), Student Network Resources, LLC ("SNRLLC") and Ross Cohen ("Cohen") (collectively referred to herein as "Defendants"), by way of Answer to the Complaint of Axact (Pvt.) Ltd ("Axact"), say:

### NATURE OF THE ACTION

1.    Defendants deny the allegations set forth in paragraph 1.  Defendants specifically state: that Axact has not been damaged; that the statements complained of address matters of public concern; that the statements complained of are either true and therefore not actionable, or are not defamatory and therefore not actionable, or are of such a nature that they cannot be shown to be either true or false and are therefore not actionable; that all of the statements complained of were posted with a reasonable, justified, subjective belief in their truth; and that none of the statements complained of were posted with actual or common law malice, or

with intent to injure Axact's business and reputation, or to the competitive and financial advantage of defendants.

2.      The allegations set forth in paragraph 2 are legal conclusions for which no response is required.  To the extent an answer is required, defendants deny the allegations set forth in paragraph 2.

## PARTIES

3.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3.

4.      Defendants admit that SNR is a New Jersey corporation but deny the remaining allegations set forth in paragraph 4.

5.      Defendants admit that SNRLLC is a New Jersey limited liability company, but deny the remaining allegations set forth in paragraph 5.

6.      Defendants admit that Ross Cohen is an individual, but deny the remaining allegations set forth in paragraph 6.

7.      Defendants deny the allegations set forth in paragraph 7.

## JURISDICTION AND VENUE

8.      Because paragraph 8 consists of legal conclusions for which no response is required, defendants neither admit nor deny the allegations set forth in paragraph 8.  To the extent a response is required, defendants deny the allegations set forth in paragraph 8.

9.      Because paragraph 9 consists of legal conclusions for which no response is required, defendants neither admit nor deny the allegations set forth in paragraph 9.  To the extent a response is required, defendants deny the allegations set forth in paragraph 9.

## FACTUAL BACKGROUND

10.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10.  However, defendants state that

from at least August 8, 2002 through on or after March 7, 2005, Axact's website claimed that "Axact is based in the United States."

          11.    Defendants admit the allegations set forth in paragraph 11, but state that all of the specified sites sell only example research to consumers.  Defendants further state that while Axact purports only to be an "information technology company," defendants provide no "information technology" services whatsoever; instead, defendants' sole commercial service is the provision of example research in the form of model research papers for student reference. According to Google's search index, none of the approximately six-hundred Web pages of the axact.com website contains even one of the fifteen major keywords that are critical to SNR's business.  Axact's complaint – while alleging "direct competition" with defendants – fails to allege that Axact provides any example research services for student reference.  Moreover, Axact implicitly but falsely denies that it owns or controls any sites selling term papers and other academic works.  However, Axact's allegation of "direct competition" implicitly acknowledges – apparently inadvertently – that while it does not compete openly with defendants through the axact.com domain, Axact competes with SNR secretly, through Axact's *de facto* operation of hundreds of ready-made and purportedly "custom-written" term paper sites, including but not limited to IvyDissertations.com, TermPaperRelief.com, AffordableDissertationWriting.com, AffordableThesisWriting.com, OriginalThesisWriting.com, IvyResearchPapers.com and AffordableResearchPapers.com, all of which Axact specifically disclaims in paragraphs 62-63 of its Complaint, and other term paper sites, including PapersHeaven.com and EssayRelief.com, which are not specifically disclaimed in paragraphs 62-63 of Axact's Complaint.  The phrase "term paper" as applied to Axact throughout this Answer and Counterclaims includes not only term paper(s), but also essay(s), thesis(es), dissertation(s), research paper(s), book report(s), literature review(s), research proposal(s), and all other types of academic documents. Defendants further state that unlike Axact's term paper writing sites – which purport to transfer copyright ownership of their essays and term papers for the intended purpose of permitting students to submit those materials illicitly for academic credit – the example research sites

owned by or affiliated with SNR go to significant lengths, in the pre-sale stage, to ensure that every customer is fully aware of the strict limits under which they may use the copyrighted, example research material that they receive from SNR.  All of SNR's sites include a detailed disclaimer that explains to prospective customers, in advance, that they may not turn in SNR's copyrighted property for academic credit, and that SNR retains 100% ownership of every example research document that SNR produces.  In the post-sale stage, SNR places a similar disclaimer at the top of the actual, example research document that SNR delivers to each customer, thereby reminding each customer of the strict limits under which he or she may properly reference the copyrighted, example research document.

        12.    Defendants admit the allegations set forth in the first sentence and footnote of paragraph 12.  Defendants deny the allegations set forth in the last sentence of paragraph 12, and state that essayfraud.org was created: (i) to protect American consumers from websites – including but not limited to Axact's originalthesiswriting.com – that blatantly and purposely lie about their credentials, experience, awards, and/or location in order to deceive American consumers into believing that they are purchasing the time, research, and writing of, *e.g.*, a "retired professor with a PhD and years of teaching experience . . . as the senior faculty member at Rochville University," which defendants have reason to believe does not exist; (ii) to protect the reputation of the American research industry from the harm caused by websites – including but not limited to Axact's termpaperrelief.com and PapersHeaven.com – that sell products replete with the stilted language and grammatical errors common to the work of writers for whom English is a second language; (iii) to warn consumers about their potential personal liability resulting from acts of plagiarism and copyright infringement engaged in by fraudulent sites – including but not limited to Axact's IvyResearchPapers.com. PapersHeaven.com and EssayRelief.com – that falsely offer to deliver "non-plagiarized" work product; (iv) to reduce the distaste created in academia, for the entire academic research industry, by websites – including but not limited to Axact's termpaperrelief.com – that openly encourage cheating, plagiarism, and/or academic fraud; (v) to make known previously-reported national security threats, such as

CNN's December 2005 exposé of Axact's non-existent Rochville University, which for no more than a $500 payment issued a genuine-looking diploma reflecting the grant of a Master's Degree in Chemical Science to a CNN investigator posing as a known al Qaeda terrorist (with a $5,000,000 bounty on his head) specializing in explosives and chemical weapons; and (vi) to provide a forum in which consumers may openly discuss and inform themselves about the issues outlined in (i)–(v) above, as well as share their personal experiences.

13.     Defendants admit the allegations set forth in paragraph 13.  However, defendants state that although Axact claims that EssayFraud.org was created to "ruin Axact's business [for] competitive and financial benefit," to the best of defendants' knowledge, no mention of "Axact" appeared anywhere on the EssayFraud.org domain until April 17, 2007 (see Plaintiff's Exhibit C) – approximately 17 months after EssayFraud.org launched.  Third parties had brought to EssayFraud.org's attention the connection between Axact, EssayRelief.com, TermPaperRelief.com, and fake diploma mills; EssayFraud attempted to verify those third-party allegations as true prior to posting any related statements on the EssayFraud.org domain, and posted no allegation about Axact that it did not have reasonable cause to believe to be true..

14.     Defendants admit the allegations set forth in the first two sentences of paragraph 14.  Defendants deny the allegations set forth in the last sentence of paragraph 14.

15.     Defendants admit the allegations set forth in paragraph 15.

16.     Defendants deny the allegation set forth in paragraph 16.

17.     Defendants deny the allegation set forth in paragraph 17.

### DEFENDANTS' [ALLEGEDLY] DEFAMATORY STATEMENTS

18.     Defendants deny the allegations set forth in paragraph 18.  Defendants state that all references to "Axact" on the EssayFraud.org domain were originally brought to EssayFraud.org's attention by third parties – most typically in Pakistan – who claimed employment with Axact and/or some other basis for direct knowledge of Axact's operations.  EssayFraud.org employed more than reasonable diligence to investigate each received accusation

concerning Axact to determine its reasonable credibility and truthfulness prior to relaying the accusation to the EssayFraud.org domain.

19. Defendants deny the allegations set forth in paragraph 19.

20. Defendants deny the allegations set forth in paragraph 20.

21. Defendants deny the allegations set forth in paragraph 21.

**[Allegedly] Defamatory Content on the Main Page**

22. Defendants admit the allegations set forth in paragraph 22, except that Defendants state on information and belief that they removed the referenced content prior to the filing of this action in November 2007.

23. Defendants deny the allegations set forth in paragraph 23. Defendants state that Plaintiff's Exhibit B shows unambiguously that the phrases "foreign scam site" and "ripoff site" are specifically directed to "TermPaperRelief" – not to Axact. Paragraph 62 of Axact's Complaint specifically disclaims ownership, operation, affiliation, or even knowledge of TermPaperRelief.com. Paragraph 23 thereby inadvertently acknowledges Axact's self-identification with TermPaperRelief.com.

24. Defendants deny the allegations set forth in paragraph 24. Defendants state that Plaintiff's Exhibit B shows unambiguously that the phrase "blatantly lie[s] about their company's location and qualifications" is specifically directed to "TermPaperRelief" – not to Axact. Paragraph 62 of Axact's Complaint specifically disclaims ownership, operation, affiliation, or even knowledge of TermPaperRelief.com. Paragraph 24 thereby inadvertently acknowledges Axact's self-identification with TermPaperRelief.com. Defendants further state that although Axact's Complaint (at paragraph 3) asserts that it is "a Pakistani corporation with a place of business in Karachi, Pakistan," statements on the Axact.com website from at least April 21, 2004 to the present claim that "Axact is based in the US," and/or that its "front office operations [are] in the US," and that Axact maintains only a "production facility" in Pakistan.

25. Defendants deny the allegations set forth in paragraph 25.

26.     Defendants deny the allegations set forth in paragraph 26.

27.     Defendants deny the allegation set forth in paragraph 27.

**[Allegedly] Defamatory Content on the Message Boards**

28.     Defendants deny the allegations set forth in paragraph 28.

29.     Defendants admit the allegations set forth in paragraph 29.

30.     Defendants deny the allegations set forth in paragraph 30.  Defendants state that "Essayfraud's" April 19. 2007 posting explicitly consisted of a question; it reported certain allegations that had been made about Axact *by Pakistanis* on the independent "creative-pakistan.com" domain, and included a live link to those allegations on the creative-pakistan.com domain.

31.     Defendants admit the allegations set forth in paragraph 31.

32.     Defendants admit that they "linked to, and republished . . . information which had appeared on another website, "creative-pakistan.com," but assert that they had reasonable cause to believe that the information posted on creative-pakistan.com is true.

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33, but specifically deny that they are "still circulating and republishing" the cited information.

34.     Defendants deny the allegations set forth in paragraph 34.

35.     Defendants deny the allegations set forth in paragraph 35.

36.     Defendants deny the allegations set forth in paragraph 36.

37.     Defendants deny the allegations set forth in paragraph 37.

38.     Defendants deny the allegations set forth in paragraph 38.

39.     Defendants deny the allegations set forth in paragraph 39.  Defendants state that Axact's Exhibit D is not a May 21, 2007 "separate post" concerning "an illegal prostitution organization," but merely includes a hyperlink to the same April 19, 2007 posting of information found on creative-pakistan.com and reported in Axact's Exhibit C.

40.      Defendants deny the allegations set forth in paragraph 40.  Defendants state that Axact's Exhibit D merely includes a hyperlink to the April 19, 2007 question preceding the posting of information found on creative-pakistan.com and reported in Axact's Exhibit C.

41.      To the extent that Defendants are able to discern the meaning of the ambiguous allegations set forth in paragraph 41, those allegations are denied.

42.      Defendants deny the allegations set forth in paragraph 42.

43.      Defendants deny the allegations set forth in paragraph 43, and repeat and reallege their answers to paragraphs 29-35.

44.      Defendants deny the allegations set forth in paragraph 44.

45.      Defendants state that Axact's Exhibit D speaks for itself, and respectfully refer the Court to Exhibit D for its contents.

46.      Defendants deny the allegations set forth in paragraph 46.  Axact's Exhibit E is, once again, not a "separately posted . . . statement," but is merely the content displayed through the hyperlink in Axact's Exhibit D, which speaks for itself.

47.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 47.

48.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 48.

49.      Defendants admit that they posted a link to the Daily Mail article, which speaks for itself and clearly showed the original "1 September 2005" publication date. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations that the Daily Mail "had elected to withdraw" the article, and that it "had been removed from the Daily Mail's own website" nine months prior to defendants' posting of a link. Defendants deny that they are "still circulating and republishing" the Daily Mail article.

50.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 50, since Axact has failed to identify what in the article it considers "false and defamatory."

8

51.     Defendants state that Axact's Exhibit E speaks for itself, and respectfully refer the Court to Exhibit E for its contents.  Defendants state that they had reason to believe – and subjectively did believe – that the posted statements were true.

52.     Defendants deny the allegations set forth in paragraph 52.

53.     Defendants state that Axact's Exhibit F speaks for itself, and respectfully refer the Court to Exhibit F for its contents.  Defendants deny the allegations set forth in paragraph 53, except admit that Defendants provided a link to an image file relating to EssayRelief, not Axact, and state that any reference to "Axact" was made by a non-party visitor to the Essayfraud.org site.

54.     Defendants state that Axact's Exhibit F speaks for itself, and respectfully refer the Court to Exhibit F for its contents.

55.     Defendants deny the allegations set forth in paragraph 55.

56.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 56.

57.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 57, but state that none of the statements made by defendants in the "May 25, 2007 postings" – all of which addressed matters of public concern – were made with either actual malice or common law malice, but were instead made with a reasonable subjective belief in their truth.

58.     Defendants deny the allegations set forth in paragraph 58.

59.     Defendants deny the allegations set forth in paragraph 59.

60.     Defendants deny the allegations set forth in paragraph 60.

61.     Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents.

62.     Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents.

However, defendants assert that they have reason to believe that Axact does own, operate or control the websites specified in paragraph 62, and certain other, unnamed websites.

63.     Defendants deny the allegations set forth in paragraph 63.

64.     Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents. However, defendants assert that they have reason to believe that Axact does own, operate or control physically non-existent universities, and accreditation organizations that are not recognized by the United States Department of Education.

65.     Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents. However, defendants assert that the conduct they have reason to believe is engaged in by Axact's "online universities and accreditation organizations" may constitute a national security threat.

66.     Defendants state that Axact's Exhibit H – a transcript from CNN Live Today about Axact's Rochville University [www.rochvilleuniversity.org] entitled, "Diploma Mills Pose Security Threat to U.S." – speaks for itself, and respectfully refer the Court to Exhibit H for its contents.   Defendants admit that Exhibit H "does not mention Axact by name." However, defendants assert that the conduct of "Rochville University" described in the cited transcript from CNN Live Today can fairly and reasonably be construed as a "national security threat," and further assert that they have reason to believe that Axact owns, operates or controls "Rochville University."

67.     Defendants state that Axact's Exhibit G, to the extent it is not wholly illegible, speaks for itself, and respectfully refer the Court to Exhibit G for its contents.

68.     Defendants deny the allegations set forth in paragraph 68.

69.     Defendants deny the allegations set forth in paragraph 69.

70.     Defendants deny the allegations set forth in paragraph 70.

## FIRST CAUSE OF ACTION
### (Defamation)

71.    Defendants repeat and reallege each and every preceding response as if fully set forth herein.

72.    Defendants deny the allegations set forth in paragraph 72.

73.    Defendants deny the allegations set forth in paragraph 73.

74.    Defendants deny the allegations set forth in paragraph 74.

75.    Defendants deny the allegations set forth in paragraph 75.

76.    Defendants deny the allegations set forth in paragraph 76.

77.    Defendants deny the allegations set forth in paragraph 77.

78.    Defendants deny the allegations set forth in paragraph 78.

## SECOND CAUSE OF ACTION
### (Trade Libel)

79.    Defendants repeat and reallege each and every preceding response as if fully set forth herein.

80.    Defendants deny the allegations set forth in paragraph 80.

81.    Defendants deny the allegations set forth in paragraph 81.

82.    Defendants admit the allegations set forth in paragraph 82, except that defendants are unable to discern the meaning Axact subscribes to the term "substandard."

83.    Defendants deny the allegations set forth in paragraph 83.

84.    Defendants deny the allegations set forth in paragraph 84.

85.    Defendants deny the allegations set forth in paragraph 85.

86.    Defendants deny the allegations set forth in paragraph 86.

87.    Defendants deny the allegations set forth in paragraph 87.

88.    Defendants deny the allegations set forth in paragraph 88.

## THIRD CAUSE OF ACTION
### (Tortious Interference With Prospective Economic Advantage)

89.    Defendants repeat and reallege each and every preceding response as if fully set forth herein.

90.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 90.

91.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 91.

92.    Defendants deny the allegations set forth in paragraph 92.

93.    Defendants deny the allegations set forth in paragraph 93.

94.    Defendants deny the allegations set forth in paragraph 94.

95.    Defendants deny the allegations set forth in paragraph 95.

96.    Defendants deny the allegations set forth in paragraph 96.

## FOURTH CAUSE OF ACTION
### (False Advertising and Unfair Competition (15 U.S.C. § 1125(a)))

97.    Defendants repeat and reallege each and every preceding response as if fully set forth herein.

98.    Defendants deny the allegations set forth in paragraph 98.

99.    Defendants deny the allegations set forth in paragraph 99.

100.    Defendants deny the allegations set forth in paragraph 100.

101.    Defendants deny the allegations set forth in paragraph 101.

102.    Defendants deny the allegations set forth in paragraph 102.

## FIFTH CAUSE OF ACTION
### (Consumer Fraud (N.J. Stat. 56:8-2))

103.    Defendants repeat and reallege each and every preceding response as if fully set forth herein.

104.    Defendants deny the allegations set forth in paragraph 104.

105.    Defendants deny the allegations set forth in paragraph 105.

106.    Defendants deny the allegations set forth in paragraph 106.

## FIRST DEFENSE

Plaintiff has failed to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands and other principles of equity.

## THIRD DEFENSE

Plaintiff's claims are unenforceable because the statements made by defendants are either not defamatory, or are true or substantially true, or are of such a nature that they cannot be shown to be either true or false.

## FOURTH DEFENSE

Plaintiff's claims are unenforceable because the statements made by defendants address matters of public concern, were made without actual malice or common law malice, and with a subjective belief in their truth.

## FIFTH DEFENSE

There is no basis in law or fact for Plaintiff's demands for punitive damages.

**WHEREFORE**, Defendants respectfully request judgment:

(a)    Dismissing the Complaint with prejudice;

(b)    Awarding Defendants' attorneys' fees and other costs of defense; and

(c)    Granting such other and further relief as the Court deems just and proper.

## **COUNTERCLAIMS**

1.       This Court possesses subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332(a)(2), 1338, and 1367.  There is complete diversity of citizenship; the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; one of the counterclaims arises under the United States Copyright Act, 17 U.S.C. § 101, *et seq.*; one of the counterclaims arises under the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*; and the remaining counterclaims are related claims under the common law and/or statutory law of the State of New Jersey.

2.       Defendant-Counterclaim Plaintiff, Student Network Resources, Inc., a New Jersey Corporation ("SNR"), is an Internet-based company that provides copyrighted, example research documents for consumer reference to customers around the world.  SNR sells its services through a number of affiliated websites.  It provides original example research by freelance professional writers, the vast majority of whom are native-speakers of the English language who have been carefully screened and trained by SNR.  Approximately 90% of SNR's freelance researcher-writers have earned upper-level degrees from American, British, Canadian, or Australian universities, and have extensive experience with various academic research methods, styles, and formats.

3.       Defendant-Counterclaim Plaintiff Student Network Resources, LLC ("SNRLLC") is a New Jersey limited liability company.

4.       Defendant-Counterclaim Plaintiff Ross Cohen is the President of SNR.

5.       Ross Cohen, acting directly and pseudonymously on behalf of SNR, is the registered owner of the consumer protection website www.essayfraud.org.  Essayfraud.org is not engaged in commerce; it sells no goods or services whatsoever; SNR in no way promotes www.snrinfo.com or any other website on the essayfraud.org domain.  Essayfraud.org is a website designed solely to protect American consumers of example research services, to repair the reputation of the example research industry, to warn consumers about the potential for

personal liability as a result of acts of plagiarism and copyright infringement by fraudulent term paper sites, to provide information about fake degree mills that potentially pose a threat to national security interests, and to provide a forum in which consumers may openly discuss and inform themselves about these issues.  Essayfraud.org informs the general public about the lies and scams of various websites, and provides a means for consumers to detail their own experiences with such fraudulent and deceptive sites.  The EssayFraud.org forum contains hundreds of postings by aggrieved non-party consumers complaining about fraud and deception at the hands of hundreds of different sites, many of which are, on information and belief, owned, operated and/or controlled by Axact.

      6.     Axact is a company that claims to be based in Pakistan.  On information and belief, Axact owns, operates and/or controls scores of websites, using hundreds of domain names, in a number of Internet businesses.  These include, *inter alia*, sites selling term papers and other academic works, and sites selling counterfeit academic degrees and/or diplomas from non-existent universities with no instructors or classrooms.  The phrase "term paper" as applied to Axact throughout this Answer and Counterclaims includes not only term paper(s), but also essay(s), thesis(es), dissertation(s), research paper(s), book report(s), literature review(s), research proposal(s), and all other types of academic documents.  Included among Axact's sites selling term papers and other academic works are IvyResearchPapers.com and OriginalThesisWriting.com (about both of which Axact explicitly disavows even having *knowledge* in ¶¶62-63 of its Complaint), as well as EssayRelief.com and PapersHeaven.com. Included among Axact's non-existent universities – from which Axact sells counterfeit academic degrees and/or diplomas – are Rochville University, Belford University and Ashford University.

      7.     Axact's term paper sites purport to provide "custom-written" essays and term papers.  They also purport to transfer copyright ownership of those essays and term papers to the purchaser, which has the intended purpose of inducing students – who believe they are acquiring the copyrights – to submit those materials illicitly for academic credit.  In fact, Axact uses this illegal offer of "copyright transfer" as a fundamental aspect of its marketing

strategy on each of its term paper sites.  Indeed, nearly all of Axact's term paper sites advertise that "Any research paper which you order from our site would bear your ownership.  It is the policy of [*name of site*] that a research paper once sold is considered the property of the owner."  During a live online Internet "chat" with a customer service representative at Axact's TermPaperRelief.com web site, an agent of SNR asked, "If I order my 10-page paper with you, can I turn it in for a grade?  I don't have time to write it myself."  Axact's representative responded immediately, "Sure, why not."

8. Virtually all aspects of Axact's transactions on its term paper sites are fraudulent.  The papers provided by Axact's sites are not "custom-written."  Instead, Axact either steals papers – in full and to order – from other Internet websites, or, alternatively, steals pieces of material from a variety of other websites and patches those materials together – with complete disregard for coherence and continuity – to create a paper that satisfies the page-length requirement specified by Axact's customer.  Since Axact steals the materials that it delivers to unsuspecting customers, Axact does not own the copyrights in the materials it steals, and cannot lawfully transfer those copyrights to purchasers.

9. In an attempt to avoid detection of its illegal practices, Axact engages in carefully calculated and deceitful measures designed to prevent purchasers from discovering that Axact has stolen from others the material it delivers to purchasers, and to prevent the academic institutions to which purchasers submit Axact's papers from discovering – through the use of automated plagiarism-detection software programs such as "Turnitin" – that the materials have been plagiarized.  These practices expose Axact's customers to both grave academic risk and potential suit for copyright infringement.

10. Axact's term paper sites, which on information and belief include all of the sites about which Axact disavows knowledge and with which it disclaims affiliation in ¶¶ 62-63 of its Complaint, compete with SNR.  On information and belief, Axact owns, operates and/or controls each of the 544 term paper sites on the list attached as **Exhibit GG.**  On its term paper sites, in addition to selling plagiarized and infringing academic papers misappropriated from

other websites, Axact engages in a number of other deceptive and fraudulent practices, including but not limited to: (1) misrepresenting the credentials and experience of their writers, and thereby selling poorly-written papers prepared by persons who speak and write English only as a second language; (2) posting images of fake, non-existent awards in order to mislead consumers; (3) falsely claiming to have received accolades directly from Yahoo and other major Internet authorities; (4) using Yahoo's logo, without permission, for financial gain, by superficially and deceptively connecting each of Axact's term paper sites to Yahoo – a "visually familiar," trusted entity; (5) posting fake "customer testimonials," with corresponding photos of each "happy" customer.

11.     Virtually all of Axact's hundreds of academic paper-writing sites have also wrongfully misappropriated the actual addresses of completely unrelated, legitimate companies and individuals – including the home address of an Illinois government official – as business addresses for its term paper sites; Axact has used those entirely false addresses when registering the Internet domain names of its term paper sites that engage in copyright infringement.  Pursuant to 17 U.S.C. § 504(c)(3)(A), these misrepresentations by Axact – knowingly providing or knowingly causing to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name that Axact uses in connection with copyright infringements – create a rebuttable presumption that Axact's infringements have been committed willfully for purposes of determining relief.

12.     As an example of Axact's deceptive and fraudulent practices, and notwithstanding Axact's explicit disavowals in ¶¶62-63 of its Complaint, Axact owns and/or controls a website, IvyResearchPapers.com, which advertises that its writers are "a group of retired professors holding nothing less than PhDs in [their] respective fields," who are former "senior faculty members and research associates at various IVY LEAGUE UNIVERSITIES." (Emphasis in original).  Further, the site guarantees that it provides "custom written, original and

*non-plagiarized* research paper-writing services."   (Emphasis added).   A print-out of the homepage of the IvyResearchPapers.com website is attached as **Exhibit A**.

13.    Long aware of the rampant plagiarism Axact engages in to fill the "custom" orders its term paper sites complete, on December 17, 2007, SNR arranged for an agent to place an order for a "custom term paper" from IvyResearchPapers.com – a site SNR believed to be owned by Axact notwithstanding the explicit denials in ¶¶ 62-63 of Axact's Complaint.   SNR sought to determine if IvyResearchPapers.com would commit copyright infringement by stealing from third parties; SNR also anticipated that the "headers" in e-mail communications that SNR's agent would receive from IvyResearchPapers.com in connection with the order – which are generally not visible in received e-mail unless the recipient's e-mail software is set to "display all headers" or "display raw" or "display source" – might prove IvyResearchPapers.com's connection to Axact.

14.    As   SNR   had   anticipated,   in   response   to   SNR's   order,   the IvyResearchPapers.com customer service representative – apparently unknowingly – sent multiple e-mails to SNR's agent (concerning billing for and delivery of the order) with unique "headers" that include an electronic "message ID" establishing that each message has been independently generated by a host computer *at axact.com*.   A "message ID" looks roughly like an e-mail address (*e.g.*, 12345.67890@host.example.com).   It has a local part and a domain part, separated by an @ sign.   The local part of the message ID is different for each piece of e-mail; the domain part – the name of the host computer that generates the message ID (*e.g.*, your computer's name when you send an e-mail message) – is constant.   Screen shots of the IvyResearchPapers.com e-mails to SNR's agent – with headers that include an "axact.com" message ID (in this example, 017701c840e9$3cca2ee0$070a0ac6@axact.com) and therefore establish that the e-mail originated from Axact's corporate e-mail system hosted at Axact.com – are attached as **Exhibit B**, with highlighting added to the message ID.

15.    The "custom" paper ordered by SNR's agent on December 17, 2007 was to be written about William Shakespeare's *Othello*.   IvyResearchPapers.com represented that the

paper would be prepared – on an eight-day turnaround basis – by one of the site's "senior faculty members" or "research associates at an Ivy League university."  Instead, the very next day, December 18, 2007, SNR received a paper on *Othello*, which SNR was quickly able to establish had unquestionably been plagiarized from two pre-existing, copyrighted works owned by Axact competitors (and, coincidentally, SNR business associates) MegaEssays.com and PlanetPapers.com.  A copy of the paper purchased by SNR's agent and delivered to SNR's agent by Axact is attached as **Exhibit C**; copies of the copyrighted works purloined from MegaEssays.com and PlanetPapers.com, and infringed by Axact, are attached as **Exhibit D**.  As set forth in Count II below, Axact routinely engages in copyright infringement through dozens of websites that it owns and/or controls, and has infringed copyrights owned by SNR.

   16. Axact also engages in other unlawful and deceptive practices on various of the other websites that it owns and controls.  For example, Axact operates a deceptive "review" website, papershelp.com, which purports to rate essay sites based upon supposedly objective criteria and "consumer reviews."  Papershelp.com is designed to appear that it has no affiliation with Axact, but is instead an objective, third-party resource for consumers of custom-written term papers.  Papershelp.com is also designed to deceive the public into believing that Axact's term paper websites offer the same, lawful services as SNR-affiliated, example research websites.  Indeed, Axact goes further, using its papershelp.com website to give the deceptive impression that neutral consumers rate Axact's own term paper-writing websites as superior to SNR-affiliated, example research websites.  Papershelp.com claims that the sites it ranks "are manually reviewed and hand picked by [its] professionals based on success in grades, writers and on time delivery"; that it "goes through vigorous site checks [for sites to] be able to appear on [its] ranking list"; and that it establishes its rankings through "feedback[], testimonials" and the opinions of its users.  Excerpts from the papershelp.com website are attached hereto as **Exhibit E**.

   17. Upon information and belief, papershelp.com neither actually uses an objective rating system, considers customer feedback, nor even manually reviews the

performance of the academic research sites that it reviews.  Instead, it simply and consistently ranks Axact-owned and controlled term paper-writing sites the highest, and ranks SNR's example research site (http://www.snrinfo.com/academon/) the lowest, thereby intentionally misleading customers into two false beliefs: (i) that Axact's copyright-infringing term paper websites provide a service identical in nature to the service provided by SNR-affiliated, example research websites; and (ii) that Axact's sites are superior to SNR-affiliated sites – which typically receive Axact's lowest possible "Consumer Rating."

18.     Axact has openly registered a United Arab Emirates domain – Axact.ae – which powers a number of dedicated, non-public e-mail servers (*i.e.*, servers that are necessarily owned, controlled by or affiliated with Axact), including one called offshoreemail.com. Offshoreemail.com in turn powers over 300 websites, including the degree mills and fake university websites at affordabledegrees.com, belforduniversity.org, and ashwooduniversity.net. It takes little imagination to understand, for example, the solicitation featured prominently on the home page of www.belforduniversity.org: "**Add bachelor's, master's or doctorate degrees to your resume in just *7 days* and open avenues to *promotion and better jobs!*"**   Emphasis added.

19.     Indeed, Axact's "big three" in fake universities – Rochville University, Belford University, and Ashwood University – have caused numerous lawsuits.  Such suits have resulted when "graduates" of Axact's universities have submitted one of Axact's bogus degrees for consideration in connection with applications for employment or promotion – and have thereby gained unfair advantage over other applicants.  A New Jersey police officer filed such a lawsuit in 2005.  Rochville University was also recently at the heart of a scandal that forced British police to re-investigate over 700 court cases (and caused British judges to reevaluate hundreds of criminal convictions) following the conviction of a fraudfeasor who posed as a forensic expert and conned British courts for years.  The fraudfeasor had gained his position by falsely claiming to have earned a BSc in Forensic Science, a Master's Degree in Forensic Investigation, and a Doctorate in Criminology; but evidence proved that he actually purchased

20

the series of fake degrees from www.affordabledegrees.com – one of the Axact websites that sell fraudulent degrees from Axact's Rochville University.  Rochville University has, moreover, sold fake, high-level degrees to Al Qaeda terrorists, and other fake degree websites have sold fraudulent degrees to people who have used those fraudulent degrees to obtain positions with top, "Q-level" security clearance – and to perform critical duties – within both the National Security Agency and National Nuclear Security Administration.

## COUNT I
**(Violation of Section 512(f) of the Digital Millennium Copyright Act**
**17 U.S.C. § 512(f),** *et seq.***; on behalf of all Counterclaimants)**

20.     The Digital Millennium Copyright Act ("DMCA") provides a safe harbor from liability for copyright infringement to Internet service providers ("ISP's") who store infringing materials created by their users, provided the ISP acts "expeditiously to remove, or disable access to" such materials after receipt of a notice alleging infringement under the DMCA.  *See* DMCA 17 U.S.C. § 512(c).

21.     On or about June 6 and June 8, 2007, Axact served notices, under color of authority of the DMCA, upon Bluehost, Inc. ("Bluehost"), the Utah-based host of the www.essayfraud.org website.   Axact's notices stated that Axact's "corporate logo and letterhead" were copyrighted works owned by Axact, and alleged that users of the www.essayfraud.org website had infringed those works.  The alleged infringement consisted merely of the posting – on www.essayfraud.org – of a "screen shot" of a page from a non-party website that incorporated Axact's logo and letterhead.  Rather than using the contact forms on Essayfraud.org directly, simply, and amicably to resolve its objections to certain content on Essayfraud.org, Axact immediately resorted to the use of legal measures.  Axact misleads the public by stating on the axact.com website, "[The lawsuit was] filed by Axact . . . after exhausting all alternate means of communication with those involved"  *See* http://www.axact.com/truth/.

22.     Axact and its attorneys knew or should have known that Axact holds no copyright in its "corporate logo and letterhead."  Indeed, corporate logos and letterheads are not subject to copyright protection as a matter of law, and could not reasonably be argued to be copyrightable under a reasonable extension of existing law.  Nevertheless, as a result of the notices sent to Bluehost, Bluehost immediately shut down access to the www.essayfraud.org website on or about June 12, 2007, and demanded that SNR remove Axact's logo and letterhead. In order to have access to its www.essayfraud.org website restored, SNR immediately and completely complied with Bluehost's demands by erasing Axact's logo and letterhead, while leaving the rest of the incriminating discussion pictured in the "screen shot" of the non-party website intact – a discussion that SNR now has reason to believe represented the content that Axact *really* wanted – but failed – to have removed.

23.     On or about July 5, 2007, Axact and/or Axact's attorney again complained to Bluehost, and Bluehost again disabled the entire EssayFraud.org website.  Upon discovering that EssayFraud.org had once again been disabled, SNR contacted Bluehost, and a Bluehost representative thereupon provided SNR with a list of specific URLs – apparently provided to Bluehost by Axact – that Axact demanded to be removed from EssayFraud.org.  Once again, in full compliance and cooperation, SNR immediately either deleted altogether or substantially edited the content of each identified URL, with the result that absolutely no mention of "Axact" remained in those URLs.  SNR's willingness to comply with the demands Axact had made through Bluehost stemmed not from SNR's knowledge or belief that any of the removed content was false or defamatory, but from SNR's recognition that its compliance was necessary in order for Bluehost to re-activate the EssayFraud,org website.

24.     Under the DMCA, the clerk of any federal district court will issue a subpoena to an ISP for the purpose of obtaining the identity of the ISP's user(s) when a party submits a "sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will *only* be used for the

purpose of protecting rights *under this title*.'' 17 U.S.C. § 512 (h)(2)(C) (emphasis added), *i.e.*, the Copyright Act.

25.     Also on or about July 5, 2007, Axact, through and in concert with its attorney, Paul B. O'Flaherty, Jr., of the firm Cheely, O'Flaherty & Ayres, filed an application with the United States District Court for the District of Utah, requesting that a subpoena pursuant to the DMCA be served on Bluehost, Inc.  A copy of the pleading is attached as **Exhibit F**.

26.     Included in Axact's application was a sworn affidavit, made pursuant to Section 512(h) of the DMCA, stating: (i) that the purpose of the requested subpoena was to ''identify the person or persons who caused material infringing upon Axact (Pvt) Ltd.'s copyright posted on the websites hosted by Bluehost, Inc.''; and (ii) that the ''information obtained pursuant to the subpoena will *only* be used for the purpose of protecting Axact (Pvt) Ltd.'s legal rights in relation *to these unlawful internet postings*.'' **Exhibit F** (emphasis added).

27.     Axact, acting through and in concert with Cheely, O'Flaherty & Ayres, deliberately and willfully misled the Court into issuing a subpoena under the transparent pretext that the operators of www.essayfraud.org had committed a copyright violation, when no copyright violation had occurred.  The true objective of this deliberately and willfully misleading application was to identify the operators of www.essayfraud.org for the purpose of filing this frivolous lawsuit alleging defamation, Lanham Act violations, and related state law causes of action.

28.     Indeed, Axact admits its true motive in bringing the DMCA lawsuit in a statement posted on Axact's website, at www.axact.com/truth:

> A discovery suit was filed in Utah, USA, to discover the hidden identity of a website owner who claimed his website to be an ''independent fraud watch-dog organization'' and was listed as a source by the above-mentioned freelance journalist of a British newspaper. The discovery suit revealed the identity to be the owner of a company involved in research and writing business and was probably defaming Axact as he felt threatened by the low cost outsourcing services of Axact provided to its many competitor organizations.

> After the above discovery, a US$ 5 million damages lawsuit was filed in New Jersey, USA, against the owner of the above-mentioned website for his strong involvement in the defamation campaign against Axact. Defamation, trade libel, false advertising, unfair competition and consumer fraud are taken up as major causes of action in the lawsuit.

Axact's press release, entitled "Axact's Response to The Defamation Campaign," is attached as **Exhibit G**.

29.     Moreover, an entry dated July 23, 2007 in Bluehost's customer log (attached to Axact's Complaint as Exhibit A) reflects that Axact continued to press Bluehost to remove from www.essayfraud.org incriminating discussions about Axact, even though Axact's logo and letterhead – the very thing Axact had purported to be protected by copyright – had been removed weeks earlier.

30.     After obtaining and serving the subpoena upon Bluehost, Axact obtained the identities of Counterclaim-Plaintiffs Student Network Resources, Inc., Student Network Resources, LLC., and Ross Cohen.  Axact also obtained the master username and password to the EssayFraud.org domain, giving Axact full access – for a period of approximately two months, completely without SNR's knowledge or consent – to all of the strictly private and proprietary files that enable the unique, highly-customized, automated functionality of EssayFraud.org.  Axact then proceeded to file suit against Counterclaim-Plaintiffs in this action – an action that makes no reference whatsoever to any purported infringement of Axact's corporate logo, much less allege *any* copyright violation under Title 17 of the United States Code.

31.     Axact's actions set forth above constitute a fraud on the court that violated Section 512(f) of the DMCA, which creates a cause of action against "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing."

32.     Axact's actions have caused substantial damages to Student Network Resources, Inc., Student Network Resources, LLC., and Ross Cohen.

**WHEREFORE** Counterclaimants hereby demand that judgment be entered against Plaintiff, awarding compensatory and punitive damages, costs and attorneys' fees pursuant to 17 U.S.C. § 512, and granting declaratory relief holding that Axact's conduct constitutes a violation of the DMCA and that neither the alleged infringing postings nor any other material removed from www.essayfraud.org pursuant to the DMCA notices violated Axact's copyright.

<u>**COUNT II**</u><br>**(Violation of the United States Copyright Act, 17 U.S.C. § 101, *et. seq*.;**<br>**on behalf of SNR)**

33.     Counterclaimants repeat each and every allegation previously stated as if set forth fully herein.

34.     Following SNR's documentation of the copyright infringement that Axact – through its IvyResearchPapers.com website – had engaged in with respect to materials on *Othello* owned by SNR business associates MegaEssays.com and PlanetPapers.com, SNR sought to determine if that blatant infringement had been aberrational, or instead reflected Axact's standard practice.

35.     SNR is the owner of copyright in hundreds of original creative works. Such works are created for SNR as example research, by experienced writers who enter into written agreements with SNR that transfer the writers' entire copyright interest to SNR by assignment.  Among these hundreds of copyrighted works are: (a) "Police Training Programs Based on the Methods of Leland P. Bradford in 1945"; (b) "Implementing an Effective Handwashing Program in Schools"; (c) "The Life and Ministry of John Shelby Spong"; (d) "Restructuring a Travel Agency for the Gay and Lesbian Population"; and (e) "Embryo Donation."

36.     On February 5, 2008, SNR duly registered its copyrights in works (a)-(d) with the United States Copyright Office; on February 20, 2008, SNR duly registered its copyrights in work (e) with the United States Copyright Office.  With respect to works (a)-(d),

25

copies of (i) the four copyright applications on Form TX and (ii) the Receipt from the Copyright Office reflecting its receipt on February 5, 2008 of the Form TX applications, fee payments, and deposit copies of these works are attached as **Exhibit H**.  With respect to work (e), copies of (i) the copyright application on Form TX and (ii) the Receipt from the Copyright Office reflecting its receipt on February 20, 2008 of the Form TX application, fee payment, and deposit copies of that work are attached as **Exhibit I.**

37.    SNR's copyrighted work "Police Training Programs Based on the Methods of Leland P. Bradford in 1945" ("Police Training") was first published on October 19, 2007.  A copy of Police Training was posted on SNR's wholly-owned website PaperNut.com.  SNR inserted, into the bibliography section of the paper, the randomly selected numerical sequence "81604."  A copy of the Police Training work SNR posted on PaperNut.com is attached as **Exhibit J.**

38.    In the early morning hours (EST) of February 1, 2008, SNR's agent placed – with IvyResearchPapers.com – an order for a custom-written, eight-page paper on the specific subject discussed in SNR's copyrighted Police Training work.  Tracking software installed on SNR's PaperNut.com domain revealed that within mere *minutes,* a computer with an IP address owned by Axact (117.20.19.195) accessed PaperNut.com and "acquired" SNR's copyrighted Police Training work.    Notwithstanding  Axact's  denials  of  knowledge  of IvyResearchPapers.com in ¶¶62-63 of its Complaint, publicly available Whois ownership records at www.domaintools.com show that "Axact Inc." owns and operates the 117.20.19.195 IP address of this accessing computer.  A copy of the tracking software's log page stating that Axact's  117.20.19.195  IP  address  visited  PaperNut.com's  "police"  page (http://www.papernut.com/police-training-programs-leland-p-bradford-1945.html) early in the morning of February 1, 2008 is attached as **Exhibit K**.

39.    Although Axact's IvyResearchPapers.com was now in possession of the stolen work it needed to fill the order placed by SNR's agent, it was aware that its customer would be suspicious if an eight-page "custom-written" paper on a topic so esoteric were to arrive

within mere minutes after the order had been placed.  Accordingly, Axact waited several hours before delivering the paper to SNR's agent.

40.    As SNR had anticipated, when delivering SNR's order, the IvyResearchPapers.com customer service representative – apparently unknowingly – attached the paper to an e-mail with "headers" that included an electronic "message ID" establishing that the message had, once again, been generated by a host computer *at axact.com*.  A screen shot of the IvyResearchPapers.com delivery e-mail to SNR's agent – with headers that include an "axact.com" message ID (7D8B78ECDB1F4A8C81EAC822B479FA1E@axact.com) and therefore establish that the e-mail originated from Axact's corporate e-mail system hosted at Axact.com – is attached as **Exhibit L**, with highlighting added to the message ID.  A copy of the paper delivered by Axact, re-titled "Leland P. Bradford and Police Training Programs," and containing the tell-tale "81604" character string in the bibliography, is attached as **Exhibit M**.

41.    When Axact prepared the stolen paper for delivery to SNR's agent, it secretly embedded hidden box-shaped characters into the paper it delivered.  These electronic characters replace – in the electronic copy of the work – the normal characters "a" and "e" that are visible on a computer screen and in printed copies.  Axact's devious purpose in employing these hidden electronic box-shaped characters is to prevent identification of the paper as "plagiarized" by the automated plagiarism-detection software programs – such as "Turnitin" – used by many academic institutions.  Such programs are generally unable to read these box-shaped characters, and thus fail to recognize the "word similarities" or "word patterns" that identify works as plagiarized.  By employing this technique, Axact not only disguises its own theft and copyright infringement, but ensures that its innocent customers will alone suffer the academic risk, and legal and monetary consequences flowing from a potential suit for copyright infringement.  A page from the police training paper that Axact submitted to SNR's agent – displaying the hidden electronic box-shaped characters Axact had embedded – is attached as **Exhibit N**.

42.     By reproducing and distributing SNR's copyrighted work, "Police Training Programs Based On the Method of Leland P. Bradford in 1945" without authorization, Axact willfully infringed SNR's copyright.

43.     SNR's copyrighted work "Implementing an Effective Handwashing Program in Schools" ("Handwashing") was first published on February 2, 2008.  A copy of Handwashing was posted on SNR's wholly-owned website PaperNut.com.  SNR inserted, into the bibliography section of the paper, the randomly selected numerical sequence "86322."  A copy of the Handwashing work SNR posted on PaperNut.com is attached as **Exhibit O.**

44.     On the afternoon of February 9, 2008, SNR's agent placed – once again with IvyResearchPapers.com – an order for a custom-written paper on the specific subject "implementing a school handwashing program".   Tracking software installed on SNR's PaperNut.com domain revealed that several hours later, a computer at the same Axact-owned IP address that had stolen SNR's Police Training work (117.20.19.195) conducted a Google search on the precise phrase used in SNR's order – "implementing a school handwashing program" – accessed PaperNut.com and "acquired" SNR's copyrighted Handwashing work.  As noted above, publicly available Whois ownership records at www.domaintools.com show that "Axact Inc." owns and operates the 117.20.19.195 IP address of this accessing computer.  A copy of the tracking software's log page showing that Axact's 117.20.19.195 IP address employed a Google search to locate and visit PaperNut.com to "acquire" SNR's Handwashing work is attached as **Exhibit P**.

45.     To further explore Axact's methods, SNR's agent intentionally ordered a seven-page paper from Axact's IvyResearchPapers.com, although SNR's Handwashing work would be at least 11 pages long in the typeface and font size (12-point Courier New) that IvyResearchPapers.com advertises to its customers.  Within fewer than two hours after Axact obtained SNR's Handwashing work from PaperNut.com, it delivered to SNR's agent a heavily edited version of the work designed to reduce the length to the ordered seven pages.  As SNR had come to anticipate, when delivering SNR's order, the IvyResearchPapers.com customer

service representative once again attached the paper to an e-mail with "headers" that included an electronic "message ID" establishing that the message had been generated by a host computer *at axact.com*.   A screen shot of the IvyResearchPapers.com delivery e-mail to SNR's agent attaching the handwashing paper – with headers that include an "axact.com" message ID and therefore establish that the e-mail originated from Axact's corporate e-mail system hosted at Axact.com – is attached as **Exhibit Q**, with highlighting added to the message ID.   A black-lined copy of the paper delivered by Axact, re-titled "School Hand-washing Program," is attached as **Exhibit R.**   The black-line reflects that to reduce SNR's work to the ordered seven pages, Axact simply deleted the introductory paragraph, several body paragraphs, and the conclusion paragraph – rendering the delivered paper practically senseless.   The tell-tale "86322" character string in the bibliography does not appear, since Axact deleted SNR's bibliography and replaced it with another bibliography, apparently stolen from another website.   However, Axact once again embedded hidden box-shaped characters in the paper delivered to SNR's agent, to avoid detection by automated plagiarism-detection software programs.

46.     By reproducing and distributing SNR's copyrighted work, "Implementing an Effective Handwashing Program in Schools" without authorization, Axact willfully infringed SNR's copyright.

47.     SNR's copyrighted work "Restructuring a Travel Agency for the Gay and Lesbian Population" ("Travel") was first published on November 25, 2007.   A copy of SNR's Travel work, as posted on SNR's wholly-owned website PaperNut.com – and into which SNR inserted, in the bibliography section of the paper, the randomly selected numerical sequence "83567" – is attached as **Exhibit S.**

48.     In the early evening of February 7, 2008, SNR's agent placed – this time with the term paper site PapersHeaven.com – an order for a custom-written paper on the specific subject "travel agency restructuring."   On Saturday, February 9, 2008, PapersHeaven.com – like IvyResearchPapers.com before it – sent an e-mail to SNR's agent (concerning billing for the order) with "headers" that included an electronic "message ID" establishing that the message,

like those from IvyResearchPapers.com, had been generated by a host computer *at axact.com*. A screen shot of PapersHeaven's February 9 e-mail to SNR's agent – with headers that include an "axact.com" message ID and therefore establish that the e-mail originated from Axact's corporate e-mail system hosted at Axact.com – is attached as **Exhibit T**, with highlighting added to the message ID.

49.     SNR's agent followed the instructions in the e-mail to call PapersHeaven's "Education Service Provider." The call was answered by a person with a heavy Pakistani accent, who explained that PapersHeaven.com was experiencing technical difficulties. However, tracking software installed on SNR's PaperNut.com domain revealed that on Monday, February 11, 2008, a computer at the same Axact-owned IP address that had stolen SNR's Police Training and Handwashing works (117.20.19.195) conducted a Google search on the precise phrase used in SNR's order – "Travel Agency Restructuring" – accessed PaperNut.com and "acquired" SNR's copyrighted Travel work. As noted above, publicly available records at www.domaintools.com show that "Axact Inc." owns and operates the 117.20.19.195 IP address of this accessing computer. A copy of the tracking software's log page showing that Axact's 117.20.19.195 IP address employed a Google search to locate and visit PaperNut.com for SNR's Travel work is attached as **Exhibit U**.

50.     Some three hours after Axact obtained SNR's Travel work from PaperNut.com, it delivered to SNR's agent an edited version of SNR's Travel work. Once again – and although the Travel paper had been ordered not from Axact's IvyResearchPapers.com, but from Axact's PapersHeaven.com – when delivering SNR's order, the PapersHeaven.com customer service representative, like the representative of IvyResearchPapers.com, attached the paper to an e-mail with "headers" that included an electronic "message ID" establishing that the message had been generated by a host computer *at axact.com*. A screen shot of the PaperHeaven.com delivery e-mail to SNR's agent attaching the travel paper – with headers that include an "axact.com" message ID and therefore establish that the e-mail originated from

Axact's corporate e-mail system hosted at Axact.com – is attached as **Exhibit V**, with highlighting added to the message ID.

51.     A black-lined copy of the paper delivered by Axact's PapersHeaven.com, re-titled "Travel Agency Restructuring," is attached as **Exhibit W.**  The black-line suggests that Axact's editor is not a native English-speaker, but has instead apparently used a word-processor's thesaurus function to make often laughable changes to the original work (*e.g.*, changing SNR's "As more and more people . . ." to "As more and more group . . ."; changing SNR's "[for a travel agency to] remain a viable business venture" to "remain a viable business project"; changing SNR's "gay men and lesbian women expect . . ." to "gay men and the lesbian women expect . . .").   The black-line also demonstrates how Axact leads its customers into simply inserting their names, professor's ("supervisor") name, and date before directly submitting Axact's work product for academic credit – even providing a fill-in-the-blank "surname" in the paper's header.  Axact also once again embedded hidden box-shaped characters in the paper delivered to SNR's agent, to avoid detection by automated plagiarism-detection software programs.  Once again, the tell-tale "83567" character string in the bibliography does not appear, since Axact deleted much of SNR's bibliography section and most of the corresponding parenthetical citations throughout the paper to make it more difficult for its customer to check sources.

52.     By reproducing and distributing SNR's copyrighted work, "Restructuring a Travel Agency for the Gay and Lesbian Population" without authorization, Axact willfully infringed SNR's copyright.

53.     SNR's copyrighted work "The Life and Ministry of John Shelby Spong" ("Spong") was first published on February 3, 2008.  A copy of SNR's Spong work, as posted on SNR's wholly-owned website PaperNut.com, is attached as **Exhibit X.**

54.     On the evening of February 13, 2008, SNR's agent placed – this time with the term paper site EssayRelief.com – an order for a custom-written paper on the subject of gays and feminists in John Shelby Spong's church.  Some six hours later, EssayRelief.com – like

31

IvyResearchPapers.com and PapersHeaven.com before it – sent the paper to SNR's agent, attached to an e-mail with "headers" that included an electronic "message ID" establishing that the message, like those from IvyResearchPapers.com and PapersHeaven.com, had been generated by a host computer *at axact.com*.

55.     However, unlike the Police Training, Handwashing and Travel papers, EssayRelief did not steal SNR's Spong work from PaperNut.com.  Instead, through a series of Google searches using brief phrases from the paper delivered by Axact, SNR was quickly able to determine that Axact had instead patched the paper together by combining large excerpts from copyrighted works Axact found and stole from at least five separate websites, including tulsainterfaith.org, cheathouse.com, wikipedia.org, liberator.net and bible.org.

56.     To determine how Axact would react when put on notice that it had been caught plagiarizing, SNR's agent immediately demanded that EssayRelief revise the Spong paper, explicitly complaining that "The document that you emailed to me is just the text of SOURCES that I already have."  A screen shot of an EssayRelief.com web page acknowledging the revision request is attached as **Exhibit Y.**

57.     Several hours later, EssayRelief sent the "revised" paper to SNR's agent. However, the revision simply made minor edits to the wording of certain paragraphs in the stolen paper Axact had submitted originally.  EssayRelief's re-delivery email once again included "axact.com" headers.  SNR's agent demanded a second revision, which made Axact fully aware that its customer recognized Axact's blatant plagiarism: "All you have done is taken the text from my five URL sources listed above and pasted that text into a document that you are calling 'my essay.'"  A screen shot of the EssayRelief page acknowledging SNR's second revision request is attached as **Exhibit Z.**

58.     Two days later, on Monday, February 18, 2008, Axact sent SNR's agent a further revised paper that once again simply made additional minor edits to the wording of certain paragraphs in the stolen paper Axact had submitted originally.  A screen shot of the EssayRelief e-mail to SNR's agent attaching Axact's *second* revision to the Spong paper – again

with headers that include an "axact.com" message ID and therefore establish that the e-mail originated from Axact's corporate e-mail system hosted at Axact.com – is attached as **Exhibit AA**, with highlighting added to the message ID.

59.     SNR has demanded a third revision to the Spong paper.  Its third revision request stated bluntly: "This is the third time that you have sent me the same, completely plagiarized paper!  You did not write a word of this paper yourself!  You stole the paper from a combination of 6 different Web sites, including Bible.org."  Axact has not responded.  A copy of SNR's demand for a third revision is attached as **Exhibit BB.**

60.     SNR's copyrighted work "Embryo Donation" was first published on February 19, 2008.  A copy of SNR's "Embryo Donation" work, as posted on SNR's wholly-owned website PaperNut.com, is attached as **Exhibit CC.**

61.     In the early morning hours of February 21, 2008, SNR's agent placed an order with OriginalThesisWriting.com – another of the sites about which Axact explicitly disavows knowledge in ¶¶62-63 of its Complaint – for a custom-written paper on the subject of "embryo donation."    Later that day, OriginalThesisWriting.com – like Axact's IvyResearchPapers.com, Axact's PapersHeaven.com and Axact's EssayRelief.com before it – sent a stolen paper on the subject of embryo donation to SNR's agent.  Like those from IvyResearchPapers, PapersHeaven and EssayRelief, the stolen paper from OriginalThesisWriting.com was attached to an e-mail with "headers" that included an electronic "message ID" establishing that the message had been generated by a host computer *at axact.com*.  A screen shot of the OriginalThesisWriting.com delivery e-mail to SNR's agent attaching the embryo donation paper – with headers that include an "axact.com" message ID and therefore establish that the e-mail originated from Axact's corporate e-mail system hosted at Axact.com – is attached as **Exhibit DD**, with highlighting added to the message ID.

62.     Axact had perhaps grown suspicious of works it found on SNR's PaperNut.com web site..  Thus, as had been the case with EssayRelief's paper on John Shelby Spong, Axact's OriginalThesisWriting.com site did not steal SNR's Embryo Donation work

from PaperNut.com, but steal it did.   Moreover, instead of embedding hidden box-shaped characters into the embryo donation paper that Axact sent to SNR's agent, it employed a new, cunning technique to make the stolen text untraceable in a Google or Yahoo search, and to foil automated plagiarism-detection programs like Turnitin.com.

63.   In the paper that Axact delivered, each lower-case letter "s" and capital letter "S" is not the true s-character that one types on a keyboard.   Instead, Axact searched-and-replaced all occurrences of those "s" letters with characters from the ancient Cyrillic alphabet. When displayed in a Microsoft Word document, the Cyrillic lower case letter "Dze" looks *exactly* like the lower-case letter "s."   Similarly, the Cyrillic capital letter "Dze" looks *exactly* like the capital letter "S."   See **Exhibit EE**, attached.   Thus, when an unsuspecting customer conducts a plagiarism-check by searching for a random string of words copied-and-pasted from Axact's delivered document, both Google and Yahoo indicate "no results" (*i.e.*, "no plagiarism"), since search engines can't recognize the Cyrillic characters.

64.   SNR, however, was not an unsuspecting customer.   It quickly ferreted-out Axact's blatant deception.   Once SNR had replaced Axact's Cyrillic characters with true "s" letters, searches in Google and Yahoo immediately established that Axact's OriginalThesisWriting.com had brazenly stolen the text of the embryo donation paper it delivered to SNR's agent from several pages located on the web sites ivf-infertility.com and conceivingconcepts.com.

65.   SNR's agent immediately confronted Axact's OriginalThesisWriting.com; the agent explicitly accused Axact of plagiarism, and demanded a new paper:   "Who do you think you are fooling?   You completely copy-and-paste plagiarized every word of 'your' essay from third-party websites. . . . You stole the entire essay from random paragraphs" on two web sites."

66.   Caught red-handed, and left with no reasonable alternative, Axact *admitted* its theft.   OriginalThesisWriting.com apologized to SNR's agent, reiterated that it is "certainly a customized services provider," and with mock indignation proclaimed, "strict action

will be taken against your assigned writer as our image is being deteriorated." A screen shot of the exchange between SNR's agent (writing pseudonymously as "Michael Landry") and OriginalThesisWriting.com's customer service representative is attached as **Exhibit FF.**

        67.    OriginalThesisWriting.com promised to deliver a new paper, and did so on February 23, 2008. Attached to its delivery e-mail – with the now familiar axact.com message ID in the headers – was the entire text of a copyrighted work owned by the American Psychological Association, which Axact apparently stole from the web site of the University of Warwick in the United Kingdom. Once again, SNR's agent feigned incredulity, explicitly accused Axact of yet another theft, and demanded another paper. SNR's agent – whose demand is attached as **Exhibit GG** – awaits a response.

        **WHEREFORE** SNR hereby demands that judgment be entered enjoining Axact, Axact's agents, and all those acting in concert with Axact and/or Axact's agents, from infringing upon SNR's copyrights in violation of the United States Copyright Act through, *inter alia*, operation of Axact's hundreds of term paper sites, and awarding, separately with respect to each of SNR's copyrighted works that Axact has infringed – "Police Training Programs Based on the Methods of Leland P. Bradford in 1945"; "Implementing an Effective Handwashing Program in Schools"; and "Restructuring a Travel Agency for the Gay and Lesbian Population" – such maximum statutory damages, costs and attorneys fees, or actual damages and profits, as are recoverable under the United States Copyright Act, 17 U.S.C. § 101, et. seq., and such other relief as the Court may deem just and equitable.

**COUNT III**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a);**
**on behalf of SNR)**

        68.    Counterclaimants repeat each and every allegation previously stated as if set forth fully herein.

35

69.     Among its many provisions, the Lanham act prohibits companies from engaging in advertising and promotion that misrepresents the nature, characteristics, qualities or geographical origin of good and services, to the detriment of a competitor.

70.     As set forth above, Axact operates a number of websites that make false and misleading representations that they provide "custom written, original and *non-plagiarized* research paper-writing services"; Axact falsely states that its services are performed by highly qualified, former faculty of American universities; and its term paper sites state or imply that their writing services are performed in the United States.  In actuality, Axact blatantly steals and plagiarizes the works of its competitors, and fills its orders – upon information and belief on computers located in Pakistan – by providing customers with work product that infringes upon the copyrights of other authors.  Upon information and belief, Axact also fills orders by providing customers with work product prepared by authors who are not former faculty of American universities, but who are instead unqualified employees who speak and write English as a second language.

71.     Furthermore, as set forth above, Axact's PapersHelp.com website deceptively misleads customers into believing that Axact's term paper websites are superior to its competitors based upon objective criteria and customer feedback, when in fact PapersHelp.com does nothing more than consistently rate Axact's term paper-writing sites higher than its competitors, including SNR's example research site, http://www.snrinfo.com/academon/. Axact's advertisement of a rating system that purportedly uses objective criteria and legitimate customer feedback is material misrepresentation.  It is a deceptive and unfair business practice that has misled consumers on the Internet for years, which, in turn, has seriously damaged SNR's reputation and substantially harmed SNR's actual and prospective economic advantage.

72.     Axact has caused all of the aforementioned false and misleading statements to enter U.S.-interstate and international commerce through its PapersHelp.com website.  Axact's false advertisements, false statements, and false and deceptive trade practices have caused SNR substantial economic harm.

36

**WHEREFORE** SNR hereby demands that judgment be entered: enjoining Axact, Axact's agents, and all those acting in concert with Axact and/or Axact's agents, generally – on Axact's academic term paper-writing sites, on any other type of Internet site to which Axact or any of Axact's agents submit any textual/visual content relating to academic paper sites, in Axact's advertisements in various Internet venues, or elsewhere – from falsely advertising and misrepresenting the nature, characteristics, qualities or geographical origin of its good and services in violation of the Lanham Act and to the detriment of SNR; specifically enjoining Axact, Axact's agents, and all those acting in concert with Axact and/or Axact's agents, from publishing – on PapersHelp.com and elsewhere – fabricated reviews or false and misleading information about any Internet web sites providing term paper or example research services, including but not limited to SNR's sites and Axact's sites, in violation of the Lanham Act and to the detriment of SNR; and awarding compensatory and punitive damages, attorneys' fees and costs, and such other relief as the Court may deem just and equitable.

<u>**COUNT IV**</u>
**(Common Law Unfair Competition; on behalf of SNR)**

73.     Counterclaimants repeat each and every allegation previously stated as if set forth fully herein.

74.     As set forth above, Axact operates a number of websites that make false and misleading representations that they provide "custom written, original and *non-plagiarized* research paper-writing services" performed by highly qualified former faculty members of American universities.  In actuality, Axact blatantly steals and plagiarizes the works of its competitors, and fills its orders by providing customers with work product that infringes upon the copyrights of other authors.  Upon information and belief, Axact also fills orders by providing customers with work product prepared by personnel who are not former faculty members of American universities, but who are instead unqualified employees who speak and write English as a second language.

75.     Further, as set forth above, Axact's PapersHelp.com website deceptively misleads customers into believing that Axact's term paper-writing websites are superior to those of its competitors based upon purportedly objective criteria and customer feedback, when in fact PapersHelp.com does nothing more than consistently rate Axact's term paper-writing sites higher than those of its competitors, including SNR's example research site, http://www.snrinfo.com/academon/.   Axact's advertisement of a rating system that purportedly uses objective criteria and legitimate customer feedback is material misrepresentation.   It is a deceptive and unfair business practice that has misled consumers on the Internet for years, which, in turn, has seriously damaged SNR's reputation and substantially harmed SNR's actual and prospective economic advantage.

76.     Acts of unfair competition engaged in on Axact's hundreds of academic paper-writing/researching websites include – but are not limited to – (i) advertising false experience or credentials (*e.g.*, "American and British writers"; "writers who have graduated or earned degrees from American and British universities"; "writing for 25 years"); (ii) advertising fake awards and customer testimonials; (iii) advertising a "money-back guarantee"; (iv) advertising "non-plagiarized" documents; (v) advertising original document writing in "2–24 hours"; and (vi) claiming false geographical locations – either on the pages of Axact's actual websites or in the websites' Whois records – in the United States, Britain, or anywhere outside of Axact's true locations in Pakistan/United Arab Emirates/Dubai.

77.     Axact's false advertisements, false statements, and false and deceptive trade practices constitute unfair competition under the common law, and have caused SNR substantial economic harm.

**WHEREFORE** SNR hereby demands that judgment be entered enjoining Axact, Axact's agents, and all those acting in concert with Axact and/or Axact's agents, from engaging in unfair competition with SNR in any manner – on any and all of Axact's hundreds of existing and future academic term paper-writing websites and elsewhere – and awarding compensatory

and punitive damages, attorneys' fees and costs, and such other relief as the Court may deem just and equitable.

## COUNT V
### (Tortious Interference with Prospective Economic Advantage; on behalf of SNR)

78.     Counterclaimants repeat each and every allegation previously stated as if set forth fully herein.

79.     SNR has a continuing economic relationship with its customers, and an expectation of prospective economic advantage from relationships to be established with new customers in the future.  Axact, at all relevant times, was aware of SNR's expectation of prospective economic advantage from SNR's relationships with its current and new customers.

80.     Axact's violations of the DMCA, its false statements made to the United States District Court for the District of Utah and to Bluehost in connection with the letters and subpoena served under the DMCA, its operation of IvyReasearchPapers.com, PapersHeaven.com, EssayRelief.com, PapersHelp.com, OriginalThesisWriting.com and other websites that make false and misleading statements to consumers in competition with SNR, its infringements of SNR's copyrights, and its prosecution of this lawsuit, are all designed tortiously to interfere with SNR's expectation of economic advantage.  Axact's conduct was in all respects engaged in intentionally and without justification or excuse.

81.     SNR's loss of customers and goodwill, as well as the legal fees SNR has been required to incur in connection with this lawsuit, have caused SNR economic harm that is the proximate result of Axact's interference.

**WHEREFORE** SNR hereby demands that judgment be entered enjoining Axact, Axact's agents, and all those acting in concert with Axact and/or Axact's agents, from tortiously interfering with SNR's prospective economic advantage, and awarding compensatory and punitive damages, attorneys' fees and costs, and such other relief as the Court may deem just and equitable.

## COUNT VI
**(Violation of the New Jersey Consumer Fraud Act, 56:8-1, *et seq.*;**
**on behalf of SNR)**

82.     Counterclaimants repeat each and every allegation previously stated as if set forth fully herein.

83.     Axact owns, controls or otherwise enables the website IvyResearchPapers.com, which advertises its writers to be "a group of retired professors holding nothing less than PhDs in [their] respective fields," who are former "senior faculty members and research associates at various IVY LEAGUE UNIVERSITIES."  Emphasis in original.  Further, the site guarantees that it provides "custom written, original and non-plagiarized research paper-writing services."  Emphasis added.

84.     Axact also owns, controls or otherwise enables the website EssayRelief.com, which advertises "Writers holding PhDs and master's degrees, along with writing experience of no less than twenty-five years, to work on your essays."  Emphasis in original.

85.     Axact also owns, controls or otherwise enables the website PapersHeaven.com, which advertises writers who are "skilled professionals from various spectrum of studies."  [sic.]

86.     Axact also owns, controls or otherwise enables the website OriginalThesisWriting.com, which advertises "Customized, Original and Non-Plagiarized Thesis Writing and Rewriting Services."   The site solicits customers by proclaiming "If finding *customized, original and non-plagiarized* writing services is your concern, then look no more!"  Emphasis added.   OriginalThesisWriting.com purports to offer the services of "a retired professor with a PhD and years of teaching experience . . . [from his] tenure as the *senior faculty member at Rochville University*."  Emphasis added.  (Not coincidentally, Rochville University is Axact's fake, physically non-existent university that – among many documented indiscretions – sold a fraudulent Master's degree in chemistry to an Al Qaeda explosives expert with a

$5,000,000 bounty on his head, as reported by CNN.)  Taking an avuncular turn, the "retired professor" insists that "I am not a businessman.  I merely like to lend a hand to students through the insight and experience that I have into thesis writing and rewriting."

87.   An agent of SNR ordered "custom term papers" from each of Axact's IvyResearchPapers.com, PapersHeaven.com, EssayRelief.com and OriginalThesisWriting.com sites.  In response to SNR's orders, each of those sites sent – apparently unknowingly – e-mail messages bearing electronic message ID's establishing that the messages had all been generated by host computers at axact.com.

88.   In response to SNR's orders, Axact's IvyResearchPapers.com sent: (i) a paper on Shakespeare's *Othello* that SNR immediately determined had unquestionably been plagiarized from and infringed the copyrighted works owned by two different competitors of Axact; (ii) a paper on police training programs that was plagiarized from and infringed the copyright of SNR's "Police Training Programs Based on the Methods of Leland P. Bradford in 1945"; and (iii) a paper on handwashing programs that was plagiarized from and infringed the copyright of SNR's "Implementing an Effective Handwashing Program in Schools."

89.   In response to SNR's order, Axact's PapersHeaven.com sent a paper on travel for the gay and lesbian population that was plagiarized from and infringed the copyright of SNR's "Restructuring a Travel Agency for the Gay and Lesbian Population."

90.   In response to SNR's order, Axact's EssayRelief.com sent a paper on John Shelby Spong that SNR immediately determined had unquestionably been plagiarized from and infringed the copyrighted works owned by at least five different web sites.

91.   In response to SNR's order, Axact's OriginalThesisWriting.com sent a paper on embryo donation that SNR immediately determined – and Axact admitted – had unquestionably been plagiarized from and infringed the copyrighted works owned by two different web sites.  Openly accused of plagiarism, Axact apologized – then brazenly proceeded to steal a different copyrighted work.

92.     In stark contrast to the descriptions, solicitations and representations on Axact's term paper sites, the services actually provided by those sites are unlawful, and reflect the shoddy and incompetent work of "writers" for whom English is a second language.

93.     Axact's false and misleading warranties regarding the quality and originality of its products and services constitute an unconscionable commercial practice, a deception, a fraud, a misrepresentation, and unlawful conduct in connection with the sale of goods and the performance of services contracted for, in violation of the Consumer Fraud Act.

94.     The prices paid by SNR to Axact through IvyResearchPapers.com, PapersHeaven.com, EssayRelief.com and OriginalThesisWriting.com are ascertainable losses. SNR's ascertainable losses are directly attributable to Axact's conduct because, but for Axact's unlawful conduct, SNR would have received papers of advertised quality and originality.

**WHEREFORE** SNR hereby demands that judgment be entered enjoining Axact from violating the Consumer Fraud Act, and awarding compensatory and punitive damages, treble damages pursuant to N.J.S.A. 56:8-19, attorneys' fees and costs pursuant to N.J.S.A. 56:8-19, and such other relief as the Court may deem just and equitable.

**LOWENSTEIN SANDLER PC**
Attorneys for Defendants Student Network Resources, Inc.,
Student Network Resources, LLC and Ross Cohen

By: /s/ Peter L. Skolnik
Peter L. Skolnik, Esq.
Michael A. Norwick, Esq.
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, NJ  07068-1791
973-597-2500(Phone)
973-597-2400 (Fax)

Dated:  February 25, 2008

42

## JURY DEMAND

Counterclaimants hereby demand a trial by jury as to all issues so triable.

LOWENSTEIN SANDLER PC
Attorneys for Defendants Student Network Resources, Inc.,
Student Network Resources, LLC and Ross Cohen

By:   /s/ Peter L. Skolnik
Peter L. Skolnik

Dated:  February 25, 2008

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that, to the best of my knowledge, the subject matter of this proceeding is not the subject of any other pending court action, or of any pending arbitration or administrative proceeding.  I am aware that if the foregoing is willfully false, I am subject to punishment.

**LOWENSTEIN SANDLER PC**
Attorneys for Defendants Student Network Resources, Inc.,
Student Network Resources, LLC and Ross Cohen

By:  /s/ Peter L. Skolnik
Peter L. Skolnik

Dated:  February 25, 2008