

**Peter L. Skolnik**
Member of the Firm
Tel   973 597 2508
Fax  973 597 2509
pskolnik@lowenstein.com

July 11, 2008

**VIA FEDEX AND ECF**

Hon. Freda L. Wolfson, U.S.D.J.
Clarkson S. Fisher Federal Building
          and United States Courthouse
402 E. State Street
Trenton, NJ 08608

Re:   Axact v. Student Network Resources, Inc., et al, Civil Action No. 07-5491 (FLW) (TJB)

Dear Judge Wolfson:

I represent defendants in this action, and write pursuant to the recent inquiry from Your Honor's chambers concerning its status. As the Court will recall, the complaint of the Pakistani plaintiff Axact (PVT), Ltd. has been withdrawn and dismissed without prejudice, and its counsel at Dreier LLP have resigned in response to their investigation undertaken following receipt of a letter from defendants raising issues under FRCP 11.

In moving to withdraw, Axact's counsel advised the Court that his investigation "discovered information which, if known at the time the complaint was filed, would have caused Dreier to refuse to file the complaint in this matter on behalf of Axact." March 18, 2008 Declaration of Ira S. Sacks, at ¶17. Although defendants' several counterclaims remained pending following the Court's April 4, 2008 Order granting Dreier's motion to withdraw as counsel and voluntarily to dismiss the complaint, Axact failed to retain new counsel to defend against the counterclaims, and default was entered by the Clerk on April 22, 2008.

In an *ex parte* letter dated April 29, 2008, Axact requested the Court's permission to proceed *pro se*. By return letter dated May 2, 2008, Your Honor declined to do so, citing the well-established law requiring artificial entities to appear only through licensed counsel. The Court further advised Axact that if it failed expeditiously to retain local New Jersey counsel, it risked "being subject to default judgment on those [counter]claims."

At the time of the Court's inquiry as to case status, I advised Your Honor's clerk that having failed to secure either new U.S. counsel or leave to proceed *pro se*, on or about May 22, 2008, Axact had instead proceeded to file an action against my clients in Pakistan – apparently with the

intention of "offsetting" any judgment rendered against it in this Court.  Axact's Pakistani complaint recites allegations and asserts defamation claims all but identical to those that Mr. Sacks's Declaration clearly implied constituted a fraud on the Court.  Further, Axact's Pakistani suit not only alleges the same facts its own U.S. counsel had found to be unsubstantiated, but it misrepresents to the Pakistani court the circumstances surrounding dismissal of Axact's complaint in this Court: it makes no mention of the counterclaims asserted against it, and states that Axact withdrew its complaint in this Court solely as a result of "concerns with regard to the expenditures . . . and lack of interest on the part of [its U.S.] attorney."

Nevertheless, I reported to Your Honor's clerk that my clients were attempting to settle the matter through Axact's Pakistani counsel, to avoid the burden and expense of moving here for entry of default judgment.  Unfortunately, those attempts to negotiate a settlement have failed; correspondence from Pakistani counsel reflect Axact's conviction that *it* will obtain a default judgment for the $6,000,000 it seeks in Pakistan, and will be able to enforce that judgment here, notwithstanding the Pakistani court's demonstrable lack of personal jurisdiction over my clients.  Accordingly, we have necessarily elected neither to defend the Pakistani action, nor to contest jurisdiction there, which would not only be extremely expensive and burdensome, but inimical to my clients' defense – under the *Uniform Foreign Country Money-Judgments Recognition Act,* N.J.S.A. 2A:49A-16 to 24 – of any subsequent action by Axact to enforce a Pakistani judgment in New Jersey.  The FCMJRA holds a judgment as not "conclusive" – and therefore not enforceable – where the "foreign country court lacked personal jurisdiction over the judgment debtor." N.J.S.A. 2A:49A-20(a)(2).  *See also Mercandino v. Devoe & Reynolds, Inc.,* 436 A.2d 942, 943 (N.J. Super. Ct. App. Div. 1981) ("It is well-established that the issue of jurisdiction underlying [a foreign] judgment is always open to inquiry, *provided that it has not been actually and fully litigated."*)  Emphasis added.

I therefore expect to file an application for default judgment with Your Honor in the next few weeks.  Consistent with defendants' counterclaims, that application will seek monetary relief in the form of, *inter alia*, statutory damages, costs and attorneys fees under the Copyright Act, 17 U.S.C. § 504(c)(2) and § 505.  Further (and in recognition of the difficulty of enforcing a money judgment against Axact), my clients will request that the default judgment grant the injunctive relief demanded in their counterclaims – specifically identifying and enjoining Axact's hundreds of infringing term-paper sites – pursuant to 17 U.S.C. § 502 (Copyright Act), 15 U.S.C. § 1125(a) (Lanham Act), N.J.S.A. 56:8-1, *et seq.* (New Jersey Consumer Fraud Act), and common law principles of unfair competition and tortious interference.

Respectfully submitted,

<u>/s/ Peter L. Skolnik</u>

Peter L. Skolnik

PLS:nvl

21332/2
07/11/08 9082442.1

cc: Hon. Tonianne J. Bongiovanni, U.S.M.J. (via ECF and FedEx)