Peter L. Skolnik
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
Attorneys for Defendants-Counterclaimants
   Student Network Resources, Inc.
   Student Network Resources, LLC
   Ross Cohen

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| AXACT (PVT), LTD.<br><br>Plaintiff- Counterclaim Defendant,<br><br>-v-<br><br><br>STUDENT NETWORK RESOURCES, INC., STUDENT NETWORK RESOURCES, LLC, and ROSS COHEN,<br><br>Defendants-Counterclaimants. | Case No. 3:07-cv-05491-FLW-TJB<br>Honorable Freda L. Wolfson, U.S.D.J.<br><br>**APPLICATION FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT AGAINST <u>AXACT (PVT), LTD.</u>**<br><br>DOCUMENT FILED ELECTRONICALLY |

     Defendants-Counterclaimants, Student Network Resources, Inc., Student Network Resources, LLC, and Ross Cohen ("Counterclaimants"), pursuant to Fed. R. Civ. P. 55(b)(2), and this Court's Local Rules, hereby request that the Court enter a Default Final Judgment in favor of Counterclaimants and against Plaintiff-Counterclaim Defendant Axact (PVT), Ltd. ("Axact"), for certain of the relief requested in Counterclaimants' Amended Counterclaims. In support of this application, Counterclaimants shall rely upon this Application, the accompanying Declarations of Peter L. Skolnik and Ross Cohen, the pleadings and other documents on file in this action, and

such additional evidence as the Court may require to be presented at or before any hearing the Court may require on the Application.

The procedural history of this matter is set forth in the Declaration of Peter L. Skolnik ("Skolnik Decl.") ¶¶3-16. As noted there, Axact's counsel moved for leave to withdraw, which motion was granted by the Court on April 4, 2008. Skolnik Decl. ¶¶8-9. Axact failed to retain substitute counsel by the April 18, 2008 deadline set forth in the Court's April 4, 2008 Order. Skolnik Decl. ¶10. Pursuant to Counterclaimants' request, on April 22, 2008, the Clerk's office entered default against Axact. Skolnik Decl. ¶11.[1]

Axact has therefore defaulted on Counterclaimants' counterclaims against Axact for copyright infringement (including violation of the Digital Millennium Copyright Act, 17 U.S.C. § 512(f)) pursuant to 17 U.S.C. §101, *et seq*,; violation of the Lanham Act, 15 U.S.C. §1125(a); common law unfair competition; tortious interference with prospective economic advantage, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et. seq*. The facts supporting those claims are set forth in the Declaration of Ross Cohen ("Cohen Decl."); for purposes of this Application, those allegations are deemed true. It is well-settled that Axact's default concedes the truth of all allegations in the Counterclaims with respect to Axact's liability. *See, e.g., Warner Bros. Records, Inc. v. Novak*, 2007 WL 1381748, No. CV 06-5342 (FLW) at *1 (D.N.J. May 9, 2007) ("when a defendant is in default, the Court treats all pleadings and allegations of the plaintiff as true"), citing *Comdyne 1, Inc., v. Corbin*, 908 F.2d 1142, 1149 (3rd Cir. 1990).

---

[1] Counterclaimants note that Axact currently has no U.S. counsel upon whom notice of this Application may be served. Consistent with its apparent view that it is impervious to the power of this Court, it has failed – by three months – to comply with the April 18, 2008 deadline the Court established for appointment of substitute counsel, and has elected instead to prosecute its frivolous, discredited claims in Pakistan. *See* Skolnik Decl. ¶13. Moreover, given the Court's letter to Axact (Skolnik Decl. ¶12 and Ex. D), Axact must be charged with notice that it risked "being subject to default judgment" on the pending counterclaims. Accordingly, the Court should assume that no counsel would appear on Axact's behalf at any hearing the Court might order.

Based on the facts set forth in the Cohen and Skolnik Declarations, and the case law cited below, Counterclaimants seek default judgment as follows:

(a) An award of the maximum statutory damages of $150,000 pursuant to § 504 of the Copyright Act for each of Axact's two willful copyright infringements that followed registration of counterclaimant Student Network Resources, Inc.'s copyrights, for a total of $300,000;

(b) An award of attorneys fees Counterclaimants incurred in connection with their copyright counterclaims, pursuant to § 505 of the Copyright Act, in the amount of $36,720.40.

(c) An award of $500 in compensatory damages plus $350,000 in punitive damages, for Axact's violations of the Lanham Act, New Jersey common law of unfair competition and tortious interference with Counterclaimants' prospective economic advantage;

(d) An award of $843.25 in compensatory damages for Counterclaimants' ascertainable loss, trebled to $2,529.75 pursuant to N.J.S.A. 56:8-19, plus $350,000 in punitive damages for Axact's violation of the New Jersey Consumer Fraud Act;

(e) A declaration, pursuant to § 512(f) of the Copyright Act, that Axact has misrepresented that material posted by Counterclaimants infringed Axact's copyrights, and that Counterclaimants have not violated any copyrights owned by Axact;

(f) A permanent injunction enjoining Axact from future copyright infringements, pursuant to § 502 of the Copyright Act;

(g) A permanent injunction enjoining Axact from future false advertising, misrepresentation, fabricated reviews, false and misleading information, and other acts of unfair competition with Counterclaimants, pursuant to the Lanham Act and common law; and

(h) A permanent injunction enjoining Axact from making false and misleading representations and warranties regarding the quality and originality of Axact's products and services in violation of the New Jersey Consumer Fraud Act.

**Counterclaimants' Entitlement to Statutory Damages Under 17 U.S.C. § 504(c).**

SNR registered its copyrights in "Implementing an Effective Handwashing Program in Schools" and "Restructuring a Travel Agency for the Gay and Lesbian Population" on February 5, 2008. Skolnik Decl. ¶42. Axact infringed the former copyright on or about February 9, 2008, and the latter on or about February 11, 2008. *Id.*; *see* Cohen Decl. ¶¶30, 34. Since those infringements followed SNR's registrations, Counterclaimants are entitled, pursuant to 17 U.S.C. § 504(c).(1), to elect to recover statutory damages, rather than actual damages and profits. Indeed, Counterclaimants need not prove actual damages to be entitled to an award of statutory damages. *See, e.g.,* 4 Melville B. Nimmer & David M. Nimmer, *Nimmer on* Copyright, §14.04[A], at 14-44-45; *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998), *cert. denied*, 525 U.S. 1141, 119 S. Ct. 1032 (1999).

Pursuant to 17 U.S.C. § 504(c)(2), the Court has discretion to "increase the award of statutory damages to a sum of not more than $150,000" for each work infringed "where the copyright owner sustains the burden of proving . . . that infringement was committed willfully." Here, the evidence of Axact's willfulness is compelling. *See* Cohen Decl. ¶30 (describing Axact's use of hidden box-shaped characters to disguise its infringement of the "Handwashing" paper);

Cohen Decl. ¶35 (describing Axact's use of the hidden-box-shaped characters and a word-processor's thesaurus function to disguise its infringement of the "Travel" paper).

It is well-settled that Courts award statutory damages on default judgments. *See Warner Bros. Records,* 2007 WL 1381748, at *2 (citing cases). Indeed, the maximum permissible statutory damages have been awarded on default judgments. *See, e.g.*, *Perfect 10, Inc. v. Talisman Comm., Inc.*, 2000 WL 364813, No. CV99-10450 RAP MCX *4 (C.D. Cal. Mar. 27, 2000) (awarding "the maximum amount of statutory damages available under § 504(c) of the Copyright Act" due, *inter alia*, to the "egregious and willful nature of the infringement").

Here, beyond mere willful infringement, the Cohen Declaration demonstrates that Axact's infringements of copyright are regular and egregious. *See, e.g.*, Cohen Decl. ¶46 (describing Axact's secret use of Cyrillic characters to evade detection); Cohen Decl. ¶¶39-41 (describing Axact's submission of a second infringing paper when confronted about infringing the first); Cohen Decl. ¶¶48-50 (describing Axact's admission of theft and subsequent delivery of another stolen paper). Axact's conduct demonstrates an indifference to U.S. law, and a belief that it can continue to infringe with impunity. The evidence demonstrates that Axact's term paper "business model" is constructed entirely on infringing copyrights held by others. Only an award of the maximum statutory damages will vindicate "the statutory policy of discouraging infringement." *Los Angeles News*, 149 F.3d at 996.

**Counterclaimants' Entitlement to Permanent Injunctive Relief**

As this Court has recognized, "courts 'routinely issue injunctions as part of default judgments.'" *Warner Bros. Records,* 2007 WL 1381748, at *3 (citing cases). The filed counterclaims for copyright infringement, Lanham Act violations, common law unfair competition,

tortious interference with prospective economic advantage, and violations of the Consumer Fraud Act – on each of which Axact has defaulted – all seek injunctive relief.

Counterclaimants maintain that Axact's conduct – as alleged with respect to each of those counterclaims – is causing irreparable injury that cannot be fully compensated or measured in money.[2] Counterclaimants further maintain that they, and others, will continue to suffer such injury at the hands of Axact unless the Court enjoins Axact's continuing infringements and violations, which are widespread, blatant and egregious. The record reflects that Axact – even when confronted with evidence of its infringements – continued to infringe. Thus, there can be no reasonable doubt that Axact will continue to infringe copyrights, compete unfairly, and violate the Lanham Act and the Consumer Fraud Act, unless enjoined.

Here, that injunction must extend to Axact's future copyright infringements, Lanham Act violations, acts of unfair competition, tortious interferences and violations of the Consumer Fraud Act. Axact's conduct throughout this litigation – including its frauds upon this and other United States Courts and upon its own former attorneys (*see, e.g.,* Skolnik Decl. ¶¶8, 35; Cohen Decl. ¶68) – reflects an indifference to United States law and to the power of this Court. . Moreover, as set forth in the Cohen Declaration at ¶65, since the counterclaims were filed, Axact has "engaged in a calculated campaign to delete, alter, or 'make private' as much online evidence as possible," including by blocking access to and falsifying records of its ownership of infringing websites, and taking other steps to protect its assets from judgment.

Axact currently infringes copyrights on 544 term paper sites; it is a simple matter for Axact to establish others, to register the domains of those new sites, and to transfer existing

---

[2] Irreparable injury is presumed in copyright cases on a showing of a reasonable likelihood of success on the merits. *See, e.g., Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1109 (9th Cir. 1998). Moreover, a default "satisfies the element of success on the merits." *Sony Music Entm't, Inc. v. Global Arts Prod.*, 45 F. Supp. 2d 1345, 1345 (S.D. Fla. 1999).

domains to sites outside the United States. Axact reaches unwary American consumers through Google, Yahoo and other Internet search engines. Its infringing websites are hosted on Web hosts through which Axact's infringing materials pass and/or are stored, if only temporarily. For any injunction against Axact's future copyright infringements and other violations of law to be effective, it must extend to Internet search engines, web hosts and domain-name registrars who are provided with notice of the injunction. Without such an injunction, the copyrighted works of Counterclaimants and all others whose copyrighted works are available on the Internet "would remain vulnerable to continued, repeated infringement" (*cf. Warner Bros. Records,* 2007 WL 1381748, at *3), and Counterclaimants and the public would remain vulnerable to Axact's continued, repeated violations of the laws of the United States and New Jersey.

In *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 213 F. Supp. 2d 1146 (C.D. Cal. 2002), the Court considered various aspects of injunctive relief in the context of the Digital Millennium Copyright Act ("DMCA"). It quoted from the legislative history of the DMCA: "'those who repeatedly or flagrantly abuse their access to the Internet through disrespect for the intellectual property rights of others should know that there is a *realistic* threat of losing that access." H.R. Rep. 105-551(II), at 61 (emphasis added). Consistent with that objective, 17 U.S.C. § 512(i) requires a service provider to adopt and implement a policy "that provides for the termination in appropriate circumstances of subscribers and account holders . . . who are repeat infringers."

The *Perfect 10* court opined that such "appropriate circumstances . . . would appear to cover, at a minimum, instances where a service provider is given sufficient evidence to create actual knowledge of blatant, repeat infringement by particular users, particularly infringement of a willful and commercial nature"; in such instances, "service providers should reasonably implement termination." 213 F. Supp. 2d, at 1177. As the *Perfect 10* court further observed,

"service providers . . . may be restrained from providing access to [infringing] material, providing system access to the infringer, or such other injunctive relief as may be considered necessary to restrain infringement at a particular location."

Recently, as reported in the trade publication "Web Host Industry Review," a federal court in San Francisco enjoined Dynadot.com – a Web host and domain-name registrar (*see* http://www.dynadot.com) – from both hosting a website engaging in illegal online activity, and from transferring the domain of that site to a different (foreign) Web hosting company. *See Bank Julius Baer & Co. Ltd. v. Wikileaks*, No. CV08-0824 JSW (N.D. Cal. San Francisco Division). A copy of the court's order is available at http://graphics8.nytimes.com/packages/pdf/national/wiki_injunction.pdf.

Here, Counterclaimants will be obliged under the DMCA to serve appropriate notices of the Court's injunction on Axact's service providers. However, that injunction should be framed explicitly to provide Internet search engines, Web Hosts and domain-name registrars receiving notice of the injunction with evidence sufficient "to create actual knowledge" of Axact's blatant, repeat copyright infringement on its 544 term paper sites – which is unquestionably "infringement of a willful and commercial nature" – as well as knowledge of Axact's other violations of law.

**Counterclaimants' Entitlement to Attorney's Fees Pursuant to 17 U.S.C. § 505**

The Copyright Act provides that the Court may, in its discretion, award full costs "against any party other than the United States or an officer thereof," and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." § 505. Indeed, it has often been held that attorney's fees are awarded to prevailing copyright plaintiffs "generally" or "ordinarily." *See, e.g., Rural Telephone Service Co., Inc. v. Feist Pubs., Inc.*, 1992 WL 160890, No. 83-4086-R, *3

(D. Kan. June 18, 1992) (surveying case law and concluding that "[b]ecause the Copyright Act is intended to encourage suits to redress copyright infringement, fees are generally awarded to a prevailing plaintiff"). Here, Counterclaimants seek no costs other than an attorney's fee of $36,720.40, which counsel represents to be a conservative estimate of that portion of the total attorney's fees incurred by Counterclaimants attributable to their copyright infringement claim, during the period (January 9-February 25, 2008) when the counterclaims were being developed, researched and prepared for filing. *See* Skolnik Decl. ¶55.

**Counterclaimants' Entitlement to Treble Damages for Axact's Violations of the Consumer Fraud Act**

The Consumer Fraud Act ("CFA") is a broadly worded, remedial statute, which "evinces a clear legislative intent . . . to root out consumer fraud." *Lemelledo v. Benefit Mgmt. Corp.*, 150 N.J. 255, 264 (1997) (citing *Barry v. Arrow Pontiac*, 100 N.J. 57, 69 (1985); *Martin v. Am. Appliance*, 174 N.J. Super. 382, 384 (Law Div. 1980)). The CFA can be "invoked . . . to cover a wide variety of practices" because "fertility of human invention in devising new schemes of fraud is so great the CFA could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out fraud in its myriad, nefarious manifestations." *Lemelledo*, 150 N.J. 265-66. For that reason, New Jersey's CFA is one of the strongest consumer protection statutes in the nation. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15 (1994); *accord Kugler v. Romain*, 58 N.J. 522, 545 (1971).

Pursuant to the test set forth in *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 114 (App. Div. 2005), Counterclaimants have unquestionably stated a claim under the CFA. They have shown: (1) unlawful conduct by the defendants (*see* Cohen Decl. ¶¶55-63); (2) an ascertainable loss (*see* Cohen Decl. ¶64); and (3) a causal relationship between Axact's unlawful conduct and the ascertainable loss, since but for Axact's unlawful conduct, SNR would have

received papers of advertised quality and originality. *See also N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div.), *certif. denied*, 178 N.J. 249 (2003). In *N.J. Citizen Action* the Appellate Division held that "[t[o] constitute consumer fraud . . . the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer. . . . " *Id*. at 115. As described in the Cohen Declaration ¶¶55-58, Axact's misrepresentations and misleading warranties regarding the quality and originality of its products and services will unquestionably victimize the average consumer, and constitute an unconscionable commercial practice, a deception, a fraud, and unlawful conduct in connection with the sale of goods and the performance of services contracted for.

The purchase prices SNR paid for the infringing papers delivered by Axact constitute ascertainable losses; Axact's misrepresentations qualify as unlawful practices. *See Cox v. Sears Roebuck*, 138 N.J. at 17. SNR paid a total of $843.25 for those papers; pursuant to N.J.S.A. 56:8-19, "In any action under this section the court *shall*, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest." Emphasis added. Accordingly, Counterclaimants are entitled to an award of $2,529.75.

**Counterclaimants' Entitlement to Punitive Damages**

Pursuant to New Jersey's Punitive Damages Act, N.J.S.A. 2A:15-5.9, *et seq*., such damages, intended "to penalize and to provide additional deterrence against a defendant to discourage similar conduct in the future," may be awarded where compensatory damages of at least $500 have been incurred (N.J.S.A. 2A:15-5.10), and may be in an amount that is "five times the liability . . . for compensatory damages or $350,000, whichever is *greater*." N.J.S.A. 2A:15-5.14 (emphasis added).

Here, Axact's "wanton and willful disregard of persons who foreseeably might be harmed by [its] acts and omissions (N.J.S.A. 2A:15-5.12) are detailed throughout the Cohen Declaration. Axact acts with reckless disregard of the likelihood that serious harm will arise from its conduct, its conduct continues unabated, and it takes repeated devious measures to conceal that conduct. *See* N.J.S.A. 2A:15-5.12(4)(b)(2) and (4). Moreover, relevant to the Court's determination of the amount of an award of punitive damages: Axact's conduct has not been terminated; it boasts of prior-year revenues in excess of $180 million (*see* Skolnik Decl. ¶18); and a substantial portion of those revenues necessarily derive from its copyright infringements and other misconduct. *See* N.J.S.A. 2A:15-5.12(4)(c)(2)-(4).

As set forth in the Cohen Declaration, Axact's false and misleading representations and deceptive practices have led to SNR's loss of customers and goodwill, and have caused SNR economic harm and the loss of prospective economic advantage in an amount not less than $500. Cohen Decl. ¶54; *see* Skolnik Decl. ¶¶46-47, 49. SNR has also sustained an ascertainable loss under the Consumer Fraud Act of $843.25. Cohen Decl. ¶64. In order to penalize Axact and discourage its egregious conduct in the future, Counterclaimants respectfully suggest that the Court should award punitive damages of $350,000 for Axact's violations of the Lanham Act, New Jersey common law of unfair competition and tortious interference with Counterclaimants' prospective economic advantage, and should award punitive damages of $350,000 for Axact's violation of the New Jersey Consumer Fraud Act.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey  07068
(973) 597-2500
Attorneys for Counterclaimants,
Student Network Resources, Inc., Student
Network Resources, LLC, and Ross Cohen


By: /s/ Peter L. Skolnik
     Peter L. Skolnik

Dated:  July 19, 2008