***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
AXACT (PVT), LTD.,                          :        Civil Action No. 07-5491 (FLW)
:
Plaintiff,             :
:
v.                                  :        **OPINION**
:
STUDENT NETWORK RESOURCES, INC.,            :
STUDENT NETWORK RESOURCES, LLC.,            :
and ROSS COHEN,                             :
:
Defendants.            :
_____:

**WOLFSON, District Judge:**

    Before the Court is a default judgment motion filed by Defendant-Counterclaimants, Student Network Resources, Inc., Student Network Resources, LLC, and Ross Cohen (collectively, "Defendants" or "SNR") against Plaintiff Axact (PVT), Ltd. ("Plaintiff" or "Axact") for certain relief requested in Defendants' Amended Counterclaims. In support of this application, Defendants rely upon the accompanying Declarations of Peter L. Skolnik and Ross Cohen, the pleadings and other exhibits filed in this action.

    By way of a brief background for the purposes of this motion, Plaintiff owns, operates and/or controls a score of websites, using hundreds of domain names, in a number of Internet businesses based in Pakistan.[1] These include, <u>inter alia</u>, sites selling term papers and other academic works, and sites selling counterfeit academic degrees and/or diplomas from-non existent universities with no

---

[1] When a party is in default, the Court treats all pleadings and allegations of the opposing party as true. See <u>Comdyne I, Inc. v. Corbin</u>, 908 F.2d 1142, 1149 (3d Cir.1990).

instructors or classrooms. Plaintiff's term paper sites unfairly compete with Defendants' research sites, which contain original works that are copyrighted. In their submissions, Defendants set forth the evidence of infringement upon Defendants' copyrights by Plaintiff. The Court hereby adopts the undisputed evidence in the Declarations of Ross Cohen and Peter Skolnik and incorporates it herein by reference. See, generally, Mr. Cohen's Decl.; Mr. Skolnik's Decl.

After the initiation of this action, Plaintiff's counsel moved for leave to withdraw from this case, which the Court granted on April 4, 2008. The Court also dismissed Axact's complaint without prejudice, allowing Plaintiff, a corporation, which may not litigate without counsel, to retain substitute counsel by April 18, 2008. Subsequently, on April 29, 2008, Mr. Fahimul Karim Sarwat, on behalf of Axact, sent a letter to the Court requesting leave for Axact to proceed pro se. In response, the Court notified Mr. Sarwat, in a letter dated May 2, 2008, that corporations may only appear in court through licensed counsel. The Court's letter also advised Mr. Sarwat to secure counsel immediately. However, no counsel ever appeared for Axact. Plaintiff has therefore defaulted on the Counterclaims asserted against it by Defendants. Subsequently, pursuant to Defendants' request, on April 22, 2008, the Clerk of the Court entered default against Plaintiff.

Specifically, the Counterclaims include: 1) violation of the Digital Millennium Copyright Act, 17 U.S.C. § 512(f) pursuant to 17 U.S.C. § 101, et seq.; 2) violation of the Lanham Act, 15 U.S.C. § 1125(a); 3) common law unfair competition; 3) tortious interference with prospective economic advantage; and 4) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. Now, Defendants move for default judgment on all counts.

## DISCUSSION

A.  **Standard of Review**

Federal Rule of Civil Procedure 55 governs the entry of default judgment. To obtain a default judgment pursuant to Fed. R. Civ. P. 55(b)(2), a litigant must first obtain an entry of default from the clerk of the court pursuant to Fed. R. Civ. P. 55(a). Once this procedural hurdle has been met, it is within the discretion of this court whether to grant a motion for a default judgment. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000). Moreover, when a defendant is in default, the Court treats all pleadings and allegations of the plaintiff as true. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir.1990). However, even after properly following the requirements of Rule 55, parties are not entitled to default judgment as of right and it is left to the "sound judicial discretion" of the Court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir.1984). Furthermore, the preference is to dispose of cases on the merits whenever practicable. Id. at 1181 (citations omitted).

Defendants seek the following relief:

(a)  An award of the maximum statutory damages of $150,000 pursuant to § 504 of the Copyright Act for each of Axact's two willful copyright infringements that followed registration of Student Network Resources, Inc.'s copyrights, for a total of $300,000;

(b)  An award of attorneys fees Defendants incurred in connection with their copyright counterclaims, pursuant to § 505 of the Copyright Act, in the amount of $36,720.40.

(c)  An award of $500 in compensatory damages plus $350,000 in punitive damages, for Axact's violations of the Lanham Act, New Jersey common law of unfair competition and tortious interference with Defendants' prospective economic advantage;

(d) An award of $843.25 in compensatory damages for Counterclaimants' ascertainable loss, trebled to $2,529.75 pursuant to N.J.S.A. 56:8-19, plus $350,000 in punitive damages for Axact's violation of the New Jersey Consumer Fraud Act;

(e) A declaration, pursuant to § 512(f) of the Copyright Act, that Axact has misrepresented that material posted by Defendants infringed Axact's copyrights, and that Defendants have not violated any copyrights owned by Axact;

(f) A permanent injunction enjoining Axact from future copyright infringements, pursuant to § 502 of the Copyright Act;

(g) A permanent injunction enjoining Axact from future false advertising, misrepresentation, fabricated reviews, false and misleading information, and other acts of unfair competition with Counterclaimants, pursuant to the Lanham Act and common law; and

(h) A permanent injunction enjoining Axact from making false and misleading representations and warranties regarding the quality and originality of Axact's products and services in violation of the New Jersey Consumer Fraud Act.

### B. Statutory Damages Under 17 U.S.C. § 504(c)

Pursuant to 17 U.S.C. § 504(c)(2), the Court has discretion to "increase the award of statutory damages to a sum of not more than $150,000" for each work infringed "where the copyright owner sustains the burden of proving . . . that infringement was committed willfully." 17 U.S.C. § 504(c)(2). A party need not prove actual damages to be entitled to an award of statutory damages. Los Angeles News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998), cert. denied, 525 U.S. 1141, 119 S. Ct. 1032 (1999). Indeed, courts award statutory damages on default judgments. See, e.g., Warner Bros. Records, Inc. v. Novak, No. CV 06-5342, 2007 WL 1381748,

at *2 (D.N.J. May 9, 2007) (citing cases). The maximum permissible statutory damages have been awarded on default judgments. Perfect 10, Inc. v. Talisman Comm., Inc., No. 99-10450, 2000 WL 364813, at *4 (C.D. Cal. Mar. 27, 2000) (awarding "the maximum amount of statutory damages available under § 504(c) of the Copyright Act" due, inter alia, to the "egregious and willful nature of the infringement").

Here, Mr. Cohen's Declaration clearly demonstrates that Axact's infringements of copyright are regular and egregious. See Cohen Decl. at ¶ 46 (describing Axact's secret use of Cyrillic characters to evade detection); Cohen Decl. at ¶¶ 39-41 (describing Axact's submission of a second infringing paper when confronted about infringing the first); Cohen Decl. at ¶¶ 48-50 (describing Axact's admission of theft and subsequent delivery of another stolen paper). Axact's conduct demonstrates an indifference to U.S. copyright law. Further, the evidence demonstrates that Axact's "business model" is constructed entirely on willfully infringing copyrights held by others. To impose the maximum statutory damage in this matter is necessary and appropriate to uphold the statutory policy of discouraging infringement. See Los Angeles News, 149 F.3d at 996. Defendants' request for relief in the amount of $300,000 is appropriate under the circumstances, and thus, will be granted.

### C. Injunctive Relief

"[C]ourts 'routinely issue injunctions as part of default judgments.'" Warner Bros. Records, 2007 WL 1381748, at *3 (citing cases). It is well settled law that in order to obtain injunctive relief, a party must establish each of the following elements: (1) it is likely to prevail on the merits; (2) it will suffer irreparable injury absent an injunction; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest.

5

Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989); NutraSweet Co. v. Vit-Mar Enter, Inc., 176 F.3d 151, 153 (3d Cir. 1999).

In this matter, Defendants' counterclaims for copyright infringement, Lanham Act violations, common law unfair competition, tortious interference with prospective economic advantage, and violations of the Consumer Fraud Act all seek injunctive relief. They have demonstrated all the factors necessary for the Court to issue an injunction against Plaintiff. Specifically, the acts committed and continuing to be perpetuated are causing irreparable injury that cannot be fully compensated or measured in monetary terms. Thus, there can be no reasonable doubt that Plaintiff will continue to infringe copyrights, compete unfairly, and violate the Lanham Act and the Consumer Fraud Act, unless enjoined. In balancing the hardships, Defendants' right to control use of their copyrights far outweigh Plaintiff's knowing infringement. Finally, the public interest will be served by ceasing further infringement and providing misleading statements by Plaintiff.

### D. Attorney's Fees Pursuant to 17 U.S.C. § 505

The Copyright Act provides that the Court may, in its discretion, award full costs "against any party other than the United States or an officer thereof," and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." § 505. Indeed, it has often been held that attorney's fees are awarded to prevailing copyright plaintiffs "generally" or "ordinarily." See, e.g., Rural Telephone Service Co., Inc. v. Feist Pubs., Inc., No. 83-4086, 1992 WL 160890, *3 (D. Kan. June 18, 1992) (surveying case law and concluding that "[b]ecause the Copyright Act is intended to encourage suits to redress copyright infringement, fees are generally awarded to a prevailing plaintiff"). Here, Defendants seek attorney's fee in the amount of $36,720.40, which counsel represents to be an estimate of that portion of the total attorney's fees incurred by Defendants

6

attributable to their copyright infringement claim, during the period (January 9-February 25, 2008) when the counterclaims were being developed, researched and prepared for filing. See Skolnik Decl. 55. The Court is satisfied with the reasonableness of the amount, and thus, finds it appropriate to award Defendants attorney's fees in the amount of $36,720.40.

### E. Treble Damages for Axact's Violations of the Consumer Fraud Act

The Consumer Fraud Act ("CFA") is a broadly worded, remedial statute, which "evinces a clear legislative intent . . . to root out consumer fraud." Lemelledo v. Benefit Mgmt. Corp., 150 N.J. 255, 264 (1997) (citing Barry v. Arrow Pontiac, 100 N.J. 57, 69 (1985); Martin v. Am. Appliance, 174 N.J. Super. 382, 384 (Law Div. 1980)). The CFA can be "invoked . . . to cover a wide variety of practices" because "fertility of human invention in devising new schemes of fraud is so great the CFA could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out fraud in its myriad, nefarious manifestations." Lemelledo, 150 N.J. 265-66. For that reason, New Jersey's CFA is one of the strongest consumer protection statutes in the nation. Cox v. Sears Roebuck & Co., 138 N.J. 2, 15 (1994); accord Kugler v. Romain, 58 N.J. 522, 545 (1971).

Pursuant to the test set forth in Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 114 (App. Div. 2005), Defendants have to show the following to state a claim under the CFA: (1) unlawful conduct by Axact (see Cohen Decl. at ¶¶ 55-63); (2) an ascertainable loss (see Cohen Decl. at ¶ 64); and (3) a causal relationship between Axact's unlawful conduct and the ascertainable loss, since but for Axact's unlawful conduct, SNR would have received papers of advertised quality and originality. See also N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div.), cert. denied, 178 N.J. 249 (2003). "[To] constitute consumer fraud . . . the business practice

7

in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer. . . . " Id. at 115. As described in the Cohen Declaration, Axact's misrepresentations and misleading warranties regarding the quality and originality of its products and services will unquestionably victimize the average consumer, and constitute an unconscionable commercial practice of deception, fraud, and unlawful conduct in connection with the sale of goods and the performance of services sought by consumers.

Moreover, the purchase prices SNR paid for the infringing papers delivered by Axact constitute ascertainable losses; Axact's misrepresentations qualify as unlawful practices. See Cox v. Sears Roebuck, 138 N.J. at 17. SNR paid a total of $843.25 for those papers; pursuant to N.J.S.A. 56:8-19, "[i]n any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest." Accordingly, Defendants are entitled to an award of $2,529.75.

### F. Punitive Damages

Pursuant to New Jersey's Punitive Damages Act, N.J.S.A. 2A:15-5.9, et seq., such damages, intended "to penalize and to provide additional deterrence against a defendant to discourage similar conduct in the future," may be awarded where compensatory damages of at least $500 have been incurred (N.J.S.A. 2A:15-5.10), and may be in an amount that is "five times the liability . . . for compensatory damages or $350,000, whichever is greater." N.J.S.A. 2A:15-5.14.

Here, Axact's wanton and willful disregard for persons who foreseeably might be harmed by its acts and omissions are outlined throughout the Cohen Declaration. Clearly, as the evidence shows, Axact acts with reckless disregard of the likelihood that serious harm will arise from its conduct, its conduct continues unabated, and it takes repeated devious measures to conceal that

8

conduct. See N.J.S.A. 2A:15-5.12(4)(b)(2) and (4). Moreover, Axact's conduct has not been terminated; it boasts of prior-year revenues in excess of $180 million (see Skolnik Decl. 18); and a substantial portion of those revenues necessarily derivs from its copyright infringements and other misconduct. See N.J.S.A. 2A:15-5.12(4)(c)(2)-(4).

As set forth in the Cohen Declaration, Axact's false and misleading representations and deceptive practices have led to SNR's loss of customers and goodwill, and have caused SNR economic harm and the loss of prospective economic advantage in an amount not less than $500. Cohen Decl. at ¶ at 54; see Skolnik Decl. at ¶¶ 46-47, 49. SNR has also sustained an ascertainable loss under the Consumer Fraud Act of $843.25, as noted earlier. To penalize and discourage Axact's egregious conduct, the Court shall award punitive damages in the amount of $350,000 for Axact's violations of the Lanham Act, New Jersey common law of unfair competition and tortious interference with Defendants' prospective economic advantage, and violation of the New Jersey Consumer Fraud Act. An appropriate Order shall follow.

Dated: October 20, 2008

    /s/ Freda L. Wolfson
The Honorable Freda L. Wolfson,
United States District Judge