

**Peter L. Skolnik**
Member of the Firm
Tel 973 597 2508
Fax 973 597 2509
pskolnik@lowenstein.com

December 10, 2008

**VIA ECF AND FEDEX**

Honorable Freda L. Wolfson, U.S.D.J.
Clarkson S. Fisher Federal Building and United States Courthouse
402 E. State Street
Trenton, NJ 08608

Re:  Axact (Pvt), Ltd. v. Student Network Resources, Inc., et al.,
     Civil Action No. 07-CV-5491 (FLW) (TJB)

Dear Judge Wolfson:

As Your Honor will recall, I represent Defendants-Counterclaimants Student Network Resources, Inc., Student Network Resources, LLC and Ross Cohen ("Defendants") in this matter, in which the Court issued an Opinion and entered an Order granting Defendants' Motion for Default Judgment on October 20, 2008 (the "Order"). I write to request certain clarifying modifications to the injunctive relief granted in the Order. Those clarifications have proven necessary to address some uncertainty about the nature and extent of obligations under the Order, which has been expressed by the domain-name registrars of the enjoined Web sites that have been served with notice of the injunction and copies of the Order.[1] In the event the Court requires that this application be raised by formal motion, Defendants will promptly comply.

The Court's Opinion stated that "Axact's infringements of copyright are regular and egregious," that its "conduct demonstrates an indifference to U.S. copyright law," and that its "'business model' is constructed entirely on willfully infringing copyrights held by others." Opinion at 5. Further, the Court declared that "there can be no reasonable doubt that [Axact] will continue to infringe copyrights, compete unfairly, and violate the Lanham Act and the Consumer Fraud Act, unless enjoined." Opinion at 6. Accordingly, the Order incorporates a list of 544 term paper websites (the "Enjoined Sites") -- all of which Defendants established, and the Court found, to regularly engage in copyright infringement and other violations of United States and New Jersey law. The Order identifies the Enjoined Sites by their domain names.

---

[1] For the Court's convenience, copies of the October 20, 2008 Opinion and Order are annexed to this letter as Exhibits A and B, respectively. A "blackline" of the proposed Revised Order is annexed as Exhibit C; the proposed Revised Order is annexed as Exhibit D. A copy of the proposed Revised Order in "word" format will be provided upon request.

Included among the injunctive provisions of the Order is a requirement that "Internet search engines, Web hosts and domain-name registrars . . . shall be and hereby are enjoined . . . (ii) from facilitating access to any or all websites through which Axact engages in such acts of copyright infringement, including but not limited to" the Enjoined Sites. Order at 2-3. That language has led to questions regarding: (a) the actions required to comply with the prohibition on "facilitating access"; (b) whether "facilitating access to . . . websites" extends to the domain names by which those websites are known; and (c) whether the prohibition addressed to "websites through which Axact engages in such acts" requires compliance immediately, or only if and when Axact *subsequently* "engages in such acts of copyright infringement." Indeed, Axact itself has taken this position with entities subject to the Order.[2]

With respect to issue (b), Defendants believe the intent of the Order is clear: that the injunction extends both to the Enjoined Sites and to the corresponding domain names -- listed in the Order -- by which they are publicly known. Accordingly, the proposed Revised Order refers throughout to "websites/domains."

With respect to issue (c), Defendants believe -- consistent with the findings of fact in the Court's Opinion -- that the conduct the Court previously found Axact to have engaged in requires immediate compliance with the Order's prohibition on "facilitating access." Accordingly, the proposed Revised Order extends the prohibition on facilitating access "to any or all websites/domains through which *the Court has found that* Axact engages in such acts of copyright infringement" (emphasis added).

The manner in which search engines, Web hosts and domain-name registrars "facilitate access" to enjoined sites/domains varies. A search engine does so by listing the site/domain in its search index, so that the site/domain will appear in a list generated by a user search such as "term papers." A Web host does so by enabling the site/domain on its server, thereby providing the Internet user with access to the site/domain's content. A domain-name registrar does so by enabling the site/domain's domain name, so that an Internet user typing the domain name "XYZ.com" into an Internet browser such as Microsoft's Internet Explorer or clicking an Internet link to "XYZ.com" will gain access to the content of "XYZ.com." Accordingly, the

---

[2]   In an electronic communication from Axact's Pakistani attorney to the attorney for domain-name registrar Dotster.com, Axact asserted that "It shall be noted that the judgment never stated that the websites should be closed rather it confirmed the continuity of these sites by stating that Axact through these sites should not violate in **Future the SNR's (Student Network Resources Inc.) <u>valid and subsisting</u> copyrights**. The court order was extremely clear as it has based everything on the future functioning of the websites." Emphasis in original.

proposed Revised Order (i) utilizes the phrase "*enabling* or facilitating access" and (ii) sets forth the different requirements that search engines, Web hosts and domain-name registrars must comply with to satisfy the prohibition on "enabling or facilitating access" to the Enjoined Sites.

During Defendants' discussions with certain domain-name registrars who have already complied with the Order to the extent of disabling the domain-name registrations of the Enjoined Sites,[3] Defendants have been advised that Axact is now demanding the release of the disabled domain names, so that the registrations may be transferred to other registrars.[4] *See* Exhibit G annexed hereto, in which Axact's Pakistani attorney threatens to seek sanctions under U.S. and Pakistani law or file a malpractice suit against a domain-name registrar's attorney unless the registrar "allow[s] the transfer of the domain names to another registrar."

On the one hand, it is certain that if the disabled domain names are released back to Axact, Axact will transfer those registrations to one or more foreign registrars beyond the Court's jurisdiction who are willing to join with Axact in flaunting the Court's Order. Such off-shore transfers would entirely eviscerate the injunctive relief granted by the Order. Accordingly, the proposed Revised Order generally prohibits domestic domain-name registrars from releasing, for transfer to another registrar, the domain names they have registered.

On the other hand, the prohibition on domain-name registrars releasing the domain names of Enjoined Sites back to Axact, which is included in the proposed Revised Order, will impose costs on the registrars associated with permanent maintenance of the Enjoined Sites. The vast majority of the domain names for the Enjoined Sites are registered by only two domain-name registrars: GoDaddy.com, which is the registrar for over 300 of the Enjoined Sites; and Dotster.com, which is the registrar for over 200 of the Enjoined Sites. Both registrars have expressed their willingness to have the registrations of the domain names of the Enjoined Sites

---

[3]  Note that virtually all of Axact's Enjoined Sites have been registered fraudulently with domain name registrars, through the use of counterfeit "addresses" that Axact wrongfully misappropriated from wholly unrelated, legitimate companies and individuals. *See* Defendants' Amended Counterclaims ¶11.

[4]  Axact has demonstrated defiance of the Order since its entry. Those domains that remain active continue to engage in the enjoined conduct. Axact has published various statements on the Internet blaming the failure of its claims against Defendants on the "malpractice" and "misconduct" of its U.S. lawyers. Axact has also issued a "Cease and Desist Letter" to Eric Goldman -- an Associate Professor at Santa Clara University School of Law and Director of its High Tech Law Institute -- who posted an entirely accurate story about this lawsuit on his Internet blog. *See* http://blog.ericgoldman.org/archives/2008/11/student_paper_w.htm and its reference to "legal demands from Axact."

transferred to Defendant Student Network Resources, Inc., -- *see* Exhibits E and F annexed hereto -- and the proposed Revised Order so provides.[5]

There is no question that the Court may order, as injunctive relief on a default judgment, such transfer of domain names used for infringing activity where, as here, it has found conduct violative of the Copyright Act and/or the Lanham Act. *See*, *e.g.*, *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 539-40 (D.N.J. 2008).

Finally, the proposed Revised Order adds 11 websites/domains to the prior "including but not limited to" list of 544. Those eleven sites, inadvertently omitted from the 544 Enjoined Sites in the original Order, are listed below, with justifications for their inclusion in the Revised Order:[6]

- 1.　　thesisquest.com:
  - a matching "sister site" [i.e., the design/layout/features/offerings of the sites are virtually identical] to the following sites already included among the 544: essayquest.com, researchpaperquest.com, termpaperquest.com.

- 2-3.　　dissertationquest.com & dissertationSquest.com:
  - a matching "sister site" to the following sites already included among the 544: essayquest.com, researchpaperquest.com, termpaperquest.com.

- 4.　　termpaperSquest.com:
  - a clone of termpaperquest.com, which is already included among the 544; they share precisely the same IP address: *see* http://www.domaintools.com/reverse-ip/?hostname=67.221.229.158).

- 5.　　essaySquest.com:
  - a clone of essayquest.com, which is already included among the 544; they share precisely the same IP address: *see* http://www.domaintools.com/reverse-ip/?hostname=67.221.229.155).

---

[5]　　The alternative proposed by GoDaddy, to *cancel* the domain name registrations, would free those domain names and permit Axact to obtain them again through another registrar beyond the Court's jurisdiction.

[6]　　Please note that the hyperlinks in ##4-11 will only work properly by "cutting and pasting" into an Internet browser.

- 6. researchpaperSquest.com:
    - a clone of researchpaperquest.com, which is already included among the 544; they share precisely the same IP address: *see* http://www.domaintools.com/reverse-ip/?hostname=67.221.229.161).

- 7-10. dissertationexpert.co.uk, thesisexpert.co.uk, courseworkexpert.co.uk, and assignmentexpert.co.uk:
    - a matching "sister site," essayexpert.co.uk, is already included among the 544; all four additional sites advertise the same phone number (0870 061 0101) as essayexpert.co.uk *see* Google search results at http://www.google.com/search?source=ig&hl=en&rlz=&q=0870+061+0101&btnG=Google+Search]).

- 11. academicresearchwriting.com:
    - a matching "sister site" to the following sites already included among the 544: essayquest.com, researchpaperquest.com, and termpaperquest.com.

For all of the above reasons, Defendants respectfully request that the Court clarify the injunctive provisions of the October 20, 2008 Order by entering the proposed Revised Order.

Respectfully submitted,

/s/ Peter L. Skolnik

Peter L. Skolnik

PLS:nvl

21332/2
12/10/08 9264280.2

cc: Hon. Tonianne J. Bongiovanni  (via FedEx)
    Vincent V. Carissimi, Esq. (via electronic mail)